This is an insurance case wherein an excess insurer, Employers National Insurance Corporation (hereinafter "Employers") sued a primary insurer, The Home Indemnity Company (hereinafter "Home Indemnity"), seeking reimbursement in the amount of $1,071,766.97, plus interest, for a settlement made with a third party on a personal injury claim filed against its insureds. Summary judgment was entered in favor of Employers; Home Indemnity appeals, claiming that summary judgment was improper because, it argues, its limit of liability was $500,000.
The following facts are necessary for a determination of the case: In January 1985, Grady Daniel Jordan, an employee of B.E. K. Construction Company, Inc., was injured on a construction project at the International Paper Company plant in Mobile. Thereafter, he sued Alan Jones, Geno McRae, and Randy Cullar, supervisory employees of B.E. K.; International Paper Company; Angelo LaCara, Jr., a supervisory employee of International Paper; The Home Insurance Company; and several fictitiously named parties. These parties were the named insureds of Home Indemnity as primary insurer and of Employers as *Page 946 
an excess insurer. As a result of his injuries, Jordan claimed damages in the amount of $5,000,000. Prior to trial, however, Home Indemnity offered $500,000 in settlement, asserting that its policy provided for a $500,000 limit on liability, in the aggregate, per occurrence, regardless of the number of insureds named in the complaint. Employers thereafter offered an additional $1,071,766.97, and the case was settled out of court. Subsequently, Employers requested indemnification from Home Indemnity in the amount of its contribution to the settlement, plus interest, claiming that the Home Indemnity policy maintained a $500,000 liability limit for each of its named insureds and that, therefore, the settlement was within the limits of the Home Indemnity coverage. The trial judge entered summary judgment in favor of Employers, holding that the Home Indemnity policy did provide a limit of $500,000, but that that limit was separate for each of its insureds named in the policy. Home Indemnity appeals. We affirm.
In order to determine if summary judgment was proper, we must analyze certain clauses of the Home Indemnity policy dealing with its liability limits. The following excerpt from the policy sets forth Home Indemnity's liability limits:
"III. LIMITS OF LIABILITY
 Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability is limited as follows:
 Coverage A. The total liability of the company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the schedule as applicable to 'each occurrence'.
 Subject to the above provision respecting 'each occurrence', the total liability of the company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the schedule as 'aggregate'."
In addition to the above, there was an endorsement to the policy that read as follows:
 "Item 1, Named Insured of the Declarations is completed to read as follows:
 "Industrial Development Board of the City of Mobile, Alabama; International Paper Company, its allied or subsidiary companies now held or hereinafter acquired; B.E. K., Inc., and all contractors, subcontractors, and/or sub-subcontractors.
 "It is further agreed that the definition of 'Insured' is deleted and replaced with the following:
 " 'Insured' means any person or organization qualifying as an insured in the 'Persons Insured' provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought as if separate policies, incorporating separate limits of liability, had been issued to each insured hereunder except that the following shall be considered a single insured:
 "International Paper Company and its subsidiaries." (Emphasis added.)
A further endorsement read as follows:
 "It is agreed that with respect to the insurance indicated below . . .
 "1. The total limit of the Company's liability for all damages as the result of any one occurrence is the amount stated below as applicable to 'each occurrence'. Item III, Limits of Liability is amended accordingly.
 "2. Any aggregate limit of liability, the amount of which is specifically stated below or in the declarations, shall nevertheless continue to apply in accordance with all the terms of the policy applicable thereto." (Emphasis added.)
The endorsement further states that the limit of liability for "each occurrence, aggregate operations, aggregate protective, *Page 947 
aggregate contractual and aggregate products" is $500,000. Employers contends that the first endorsement, which states that the policy will incorporate separate limits of liability, indicates that each of the named insureds will have a separate limit of liability, i.e., that each insured would be entitled to $500,000 of coverage. We agree. See Commercial StandardInsurance Co. v. General Trucking Co., 423 So.2d 168 (Ala. 1982), wherein we stated the following:
 "Webster's Third New International Dictionary (1971) defines 'endorsement' as follows: 'Insurance: a provision added to an insurance contract altering its scope or application that takes precedence over printed portions of the policy in conflict therewith.'
". . . .
 "Where there is added to a printed form a written or typewritten clause, that clause should be considered as superseding those clauses in conflict which are printed in the form. Pearl Assurance Company v. Hartford Fire Insurance Company, 239 Ala. 515, 195 So. 747 (1940)."
Id., at 170. In light of our decision in Commercial StandardInsurance, we note that Employers, as the excess insurer and not the author of the policy in dispute, is entitled to have any ambiguity resolved in its favor:
 "[Insurer] contends that the rule that an ambiguity in an insurance contract should be interpreted in favor of the insured and against the insurer should be ignored where the dispute is between two insurance carriers. We do not agree. Georgia Casualty Surety Company v. Universal Underwriters Insurance Company, 534 F.2d 1108 (5th Cir. 1976)."
Id., at 171. The policy clearly states that each insured would have coverage as if separate policies had been issued for each of them and that separate liability limits existed for each insured, even if those limits were all the same. We are of the opinion that the trial court, applying the rule that an ambiguity in an insurance contract should be resolved in favor of the insured, could determine that the policy provided for a liability limit of $500,000 for each insured. Home Indemnity drafted the policy and any ambiguity regarding the liability limit should be construed in favor of Employers. See Upton v.Mississippi Valley Title Insurance Co., 469 So.2d 548 (Ala. 1985), wherein we wrote:
 "In Aetna Life Ins. Co. v. Hare, 47 Ala. App. 478, 256 So.2d 904 (1972), the court explained:
 'In the first place, insurance contracts are subject to the same general rules of all written contracts, that is, in case of doubt or uncertainty of the meaning thereof, they are to be interpreted against the party drawing them. If a policy is clear and unambiguous in its terms, there is no question of interpretation or construction. Dunlap v. Macke, 233 Ala. 297, 171 So. 721. If a policy is unclear and ambiguous in its terms and not void for uncertainty, it must be interpreted and construed under well settled rules of construction applicable to all contracts. It is the province of the court, not the jury, after due consideration of the whole of the policy to determine if uncertainty and ambiguity exist in its terms. It is further the province of the court, not the jury, to construe a policy, even though ambiguous and unclear and not void for uncertainty, where its interpretation must come from the writing itself
without the aid of evidence aliunde or facts in pais. Boykin v. Bank of Mobile, 72 Ala. 262; Lutz v. Van Heynigen Brokerage Co., 199 Ala. 620, 75 So. 284; Foster Creighton Co. v. Box, 259 Ala. 474, 66 So.2d 746.' "
Id., at 555 (emphasis original).
For the foregoing reasons, the summary judgment in favor of Employers is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES and ALMON, JJ., concur. *Page 948