American and Foreign Insurance Company ("A F") appeals from a partial summary judgment entered in favor of Tee Jays Manufacturing Company, Inc., and Tee Jays Holding Corporation (collectively "Tee Jays"), on Tee Jays' claim for benefits for a claimed business income loss, under an insurance policy it had bought from A F.[1] We affirm. *Page 1227 
 I.
In October 1993, A F issued to Tee Jays an insurance policy entitled "Business Protection Portfolio." The policy read, in pertinent part:
"COMMERCIAL PROPERTY COVERAGE PART
"ROYAL FLEX COVERAGE
". . . .
 "IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
". . . .
 "Real and Business Personal Property, Business Income and Accounts Receivable in accordance with the Statement of Values on file with this company. . . ."
(Emphasis added.)
The business income loss coverage was to compensate the insured for lost profits or loss of earnings incurred after an occurrence, and it was to be computed on a "daily value" basis; that is, according to the amount of business income that Tee Jays would have earned each working day if no loss or damage had occurred.
The policy stated that the base premium Tee Jays paid at the inception of each policy year was actually an advance premium, subject to adjustment at the end of the policy year. The amount of advance premium charged at the beginning of the year was to be based upon a "Statement of Values" submitted by Tee Jays; that statement was to list the value of Tee Jays' covered assets. The policy required Tee Jays to supplement this information by submitting a second statement within 60 days before the end of the policy period; the policy specified that Tee Jays was to submit a listing of its business income at that time. The policy stated that, if the values Tee Jays reported at the end of the year differed by more than 2% from the values it had submitted at the beginning of the year, the premium would be decreased or increased as needed to reflect the true amount of the values listed.
The policy period began on October 4, 1993, and ended on October 4, 1994. The record shows that, at the beginning of the policy year, Tee Jays submitted to A F a statement reporting the value of its commercial property and reporting part of its business income; however, Tee Jays did not include the entire amount of its business income. Although A F computed the advance premium of $144,127 based solely on the amounts in this statement, the policy provided that, in return for the payment of this premium, A F agreed to provide the insurance as stated in the policy, which included business loss insurance. The policy stated, however, that the premium would be subject to adjustment based upon the information contained within the yearly report that the insured was required to make within 60 days of the anniversary of the policy.
On February 9, 1994, Tee Jays suffered a fire loss to a portion of its business. Tee Jays submitted a claim to A F for property damage it had sustained in the fire, and A F paid this claim up to the policy limits. Tee Jays subsequently filed a claim for benefits under the business income loss coverage, submitting a proof of loss form showing business losses of $3,922,191.63. A F never paid that claim.
In September, within 60 days of the anniversary of the policy, Tee Jays submitted the annual report of its property values, as the policy required it to do, and, at that time, it reported all of its annual business income. Tee Jays requested that A F increase the premium due at the end of the policy year as needed, in view of this business income that it had not reported in its entirety at the outset of the policy year.
In response, A F refused to adjust the premium. A F advised Tee Jays that, when it issued the policy, it had not intended to provide Tee Jays with business income loss coverage and that it thus had not charged Tee Jays an advance premium for such coverage. A F claimed that the insurance policy it issued to Tee Jays was a computer-generated form that its agents edited to conform to each client, that the inclusion *Page 1228 
of a business income loss provision within the policy was merely a unilateral clerical mistake, and that Tee Jays' failure to pay for the coverage from the outset indicated that it had not intended to have such coverage. A F therefore effectively denied the business income loss coverage to Tee Jays, and Tee Jays brought this action. A F then filed a "counterclaim for reformation," alleging that the contract contained clerical errors that caused the contract incorrectly to appear to provide business income loss coverage to Tee Jays. Tee Jays moved to dismiss the counterclaim and also moved for a partial summary judgment on the issue whether A F was required to provide the business income loss coverage.
After a hearing, the trial court determined that the insurance contract was unambiguous but that, even if it had been ambiguous, it would be construed against the insurer. The trial court went on to note that the only affidavit testimony as to the amount of Tee Jays' business loss had come from William Newby, Tee Jays' vice-president; Newby adopted the sworn proof of loss (in the amount of $3,922,191.63) that Tee Jays had submitted to A F. However, the trial court also noted that the defendants had introduced documents from its accountants showing that, when the loss was computed according to the provisions of the insurance policy, it amounted to $1,941,302. Based on this evidence, the trial court determined that $1,941,302 was the undisputed floor for any judgment on the contract. To this amount, the trial court added 6% interest accruing since the claim had become payable, and entered a total judgment of $2,120,872. As to A F's counterclaim for reformation of the contract, the trial court held that any mistake A F had made could not be deemed a mere clerical error and could not form the basis of a reformation of the contract; thus, the trial court dismissed the counterclaim.
 II.
A F first argues that the trial court erred in entering the summary judgment for Tee Jays, ordering A F to provide the business income coverage. We begin by noting that insurance contracts are subject to the same general rules applicable to other written contracts; specifically, in case of doubt or uncertainty as to a policy's meaning, the terms of the policy are to be interpreted against the party that drafted them.Home Indemnity Co. v. Employers National Insurance Corp.,564 So.2d 945 (Ala. 1990). If the policy is clear and unambiguous in its terms, then there is no question of interpretation or construction. Home Indemnity. If the policy is unclear and ambiguous in its terms, but not void for uncertainty, then it must be interpreted and construed under well-settled rules of construction applicable to all contracts. It is the province of the court, not the jury, after duly considering the whole of the policy, to determine if it is uncertain or ambiguous in its terms. It is further the province of the court, not the jury, to construe a policy, even though ambiguous and unclear but not void for uncertainty, where its interpretation must come from the writing itself. Home Indemnity.
Here, the policy, on its face, clearly provides business loss coverage for Tee Jays, and any mistake in including this coverage in the policy must be construed against A F. A F emphasizes that Tee Jays did not pay a premium for this coverage at the beginning of the policy period; however, the policy itself allowed for an adjustment of the premium at the end of the policy period and specifically required Tee Jays to report its business value at that time. Tee Jays complied with the requirement that it submit its business value 60 days prior to that time, and it stood ready to pay the increase in the premium that was necessary to pay for the business income loss coverage. Under the express terms of the insurance policy it wrote, A F was therefore bound to provide this coverage to Tee Jays.
A F argues that the inclusion of the express business income loss coverage terms in the policy was a clerical error and that the trial court therefore erred in dismissing its counterclaim for reformation of the contract. In response to this argument, the trial court found and held as follows: *Page 1229 
 "On May 23, 1996, the defendants filed [a] 'Counterclaim for reformation' alleging 'clerical errors or mistakes' in connection with the providing of 'Business Income' protection. On June 7, 1996, the plaintiffs filed a Motion to Dismiss under Rule 12(b)(6)[, Ala.R.Civ.P.], specifically alleging that the only grounds for reformation are provided by Code of Alabama 1975, § 8-1-2, which provides:
 " 'When, through fraud, a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value.'
 "Although [they] could have done so as a matter of course, the defendants did not amend [their] Counterclaim so as to comply with the requirements of this Code section, choosing instead to advance a 'clerical error or mistake' argument. Even given liberal pleading construction, the defendants have failed to allege any of these valid grounds for relief. Given the fact that the burden of proof in such action is 'clear and convincing,' the Court can only conclude that the defendants conclude that the legal basis by the proper standard is unmaintainable. If 'clerical error or mistake' as alleged by the defendants under the undisputed facts of this case can form the basis of the reformation of a contract, then there would never be a contract or contract provision, no matter how clear, that would be safe from attack. A clerical error is where 'Smyth' is substituted for 'Smith' or where '221.1 acres' is typed as '22.11 acres.' A unilateral mistake will not suffice. American Liberty Insurance Co. v. Leonard, [270 Ala. 17] 115 So.2d 470 (1959). A unilateral mistake is all that is alleged by the defendant[s], and this deficiency is acknowledged by [their] representative in produced documents. This refusal to accept the sufficiency of the Counterclaim as a matter of law is strengthened by the following excerpt from the policy itself;
" 'B: CHANGES
 " 'This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.' . . .
 "This is a contractual mandate that the 'parol evidence rule' and the doctrine of 'merger' apply. There are serious implications when a contracting party represents that there are no other agreements except what is stated in the policy and then, after a loss, petitions the Court to reform the contract to add or take away from such contract.
 "Accordingly, the plaintiff's Motion to dismiss the 'Counterclaim for Reformation' is GRANTED and said Counterclaim is hereby DISMISSED."
We agree with the trial court's dismissal of A F's counterclaim and hereby adopt the quoted portion of its order as a part of our opinion. We likewise agree that the trial court properly entered the summary judgment for Tee Jays holding that A F must provide the insurance coverage that it included in the policy issued to Tee Jays. The trial court's judgment is therefore affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, COOK, and SEE, JJ., concur.
[1] In addition to the claim for benefits, Tee Jays sought damages for an alleged bad faith failure to pay the claim. The trial court made its ruling on the coverage issue final, pursuant to Rule 54(b), Ala.R.Civ.P. *Page 1230