[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 689 
This is an appeal from a declaratory judgment. It presents as the primary issue whether an insured's employee was operating a "covered auto" under the subject insurance policy. The trial court found that the employee was operating a "covered auto" under her employer's policy and that she was, therefore, an "insured" and was entitled to coverage. We affirm.
 Facts
In August 1997, Carolyn Glass was employed as a home health aide by the Southeast Alabama Medical Center Health Care Authority ("the Health Care Authority"). Glass traveled to patients' homes and provided in-home care to those patients. Glass's employment with the Health Care Authority was conditioned upon Glass's providing her own transportation to perform her duties. As compensation for her employment, the Health Care Authority paid Glass an hourly rate. Additionally, the Health Care Authority paid Glass a sum for mileage, based upon the number of miles driven by Glass in the performance of her duties.
On August 15, 1997, Glass reported to the Health Care Authority to obtain her schedule of patient visits for the day. Glass then went about visiting her patients. Glass was driving her personal car. While en route to a patient's home, Glass entered U.S. Highway 84 in Houston County and collided with a car driven by Mildred A. Avant. Avant was seriously injured in the accident, and Glass died as a result of the injuries she sustained in the accident.
Avant and her husband sued Glass's estate, the Health Care Authority, and Alfa Mutual Insurance Company ("Alfa"). The Avants claimed that Glass's negligence and/or wantonness had caused the accident, that the Health Care Authority was vicariously liable for Glass's alleged misconduct, and that Avant was entitled to underinsured motorist benefits under the automobile liability insurance policy issued to Avant by Alfa.
At the time of the August 15, 1997, accident, Glass was insured under a personal automobile liability insurance policy issued by AIG.[1] Under that policy, the coverage for bodily injury was limited to $20,000. The Health Care Authority was insured under a automobile liability insurance policy issued by Twin City Fire Insurance Company ("Twin City") that provided coverage for bodily injury, with a limit of $1,000,000. Avant was insured under an automobile liability policy issued by Alfa that provided underinsured motorist benefits up to $320,000.
In an effort to dispose of the Avant lawsuit before trial, the parties entered into settlement negotiations. On behalf of Glass's estate, AIG tendered its policy limits of $20,000. A dispute arose between Alfa and Twin City as to the amount Twin City should contribute to a settlement. Twin City took the position that the vicarious liability of the Health Care Authority was limited to $100,000 by § 11-93-2, Ala. *Page 690 
Code 1975, [2] and it tendered $100,000 toward the settlement on behalf of the Health Care Authority. Twin City also took the position that Glass was not an insured under the Health Care Authority's policy and that Twin City was not otherwise obligated to contribute to the settlement on behalf of Glass. Alfa contended that Glass was an insured under the policy Twin City issued to the Health Care Authority and that § 11-93-2
did not limit Twin City's liability on behalf of the Health Care Authority.[3] Alfa's position was that it was not obligated to pay any underinsured motorist benefits to Avant until Twin City's policy limits ($1,000,000) had been exhausted by payments on behalf of the Health Care Authority and/or Glass.
In order to finally settle the Avants' claims and ultimately the lawsuit, Alfa tendered $320,000 toward the settlement, but expressly reserved the right to settle its dispute with Twin City at a later date. On June 11, 1998, the Avants settled their claims against Glass's estate, the Health Care Authority, and Alfa for $440,000: of that amount, $20,000 had been paid by AIG on behalf of Glass; $100,000 had been paid by Twin City on behalf of the Health Care Authority; and $320,000 had been paid by Alfa pursuant to the underinsured-motorist-benefits provisions of its policy with Avant.
Alfa filed this declaratory-judgment action to settle its dispute with Twin City. Twin City filed an answer and a counterclaim for a declaratory judgment against Alfa. After Twin City amended its pleadings, each party filed a motion for a summary judgment pursuant to Rule 56, Ala.R.Civ.P., with the appropriate evidentiary submissions. Twin City also filed motions to strike the additional documents Alfa had filed with its motion for a summary judgment and the proposed affidavit of Johnny Johnson. Each party filed briefs in opposition to the other party's motion for a summary judgment. After oral argument, the trial court granted Alfa's motion for a summary judgment and denied one of Twin City's motions to strike materials submitted by Alfa in support of its summary-judgment motion. Twin City appealed.
 Analysis I.
As a preliminary issue, Twin City argues that the trial court erred in denying Twin City's motions to strike materials submitted by Alfa in support of its motion for a summary judgment. Twin City acknowledges that it does not know which motion to strike the trial court denied. In the trial court's minute entry, the trial court denied one of Twin City's motions to strike, but did not specify which one it was denying.
From the record we can infer that the trial court denied Twin City's motion to strike additional documents to Alfa's motion for summary judgment rather than its motion to strike the proposed affidavit of Johnny Johnson. Johnny Johnson is an employee of the Alabama Department of Insurance. Twin City argues that his affidavit is an impermissible expression of opinion on the ultimate issue in the case. Alfa's position is that his affidavit is proper expert witness testimony intended to enlighten the trier of fact. The record indicates that at the hearing on the *Page 691 
cross-motions for summary judgment, Alfa requested leave to cure the defects in its proposed affidavit of Johnny Johnson. The trial judge granted Alfa an opportunity to supplement Johnson's affidavit, but he stated that he was not accepting or considering the affidavit and that he would not accept or consider any supplementation of the affidavit that Alfa submitted. Further, the trial court ruled on the cross-motions for summary judgment on March 8, 2001 — four days before Alfa filed its supplement to the affidavit of Johnny Johnson on March 12, 2001. Fourteen days later, on March 26, 2001, Twin City filed its motion to strike the supplement to the affidavit of Johnny Johnson. The trial court declined to rule on this motion, presumably because it was moot.
Additionally, Twin City's motion to strike the additional documents attached to Alfa's motion for a summary judgment is based on its objection that the business documents of the Health Care Authority submitted by Alfa as exhibits in support of its motion for a summary judgment were not properly authenticated. A proper foundation for the admission of business records requires sworn testimony or a certification that the documents were made in the regular course of the business of the keeper of the records and that the documents were made or created at the time of the act, transaction, occurrence, or event, or within a reasonable time thereafter. Rule 44(h), Ala.R.Civ.P. Although Alfa asserts that it has such a certification executed by the custodian of records of the Health Care Authority and by stipulation it has supplemented the record on appeal with that certification, the record does not reflect that the certification was filed with the exhibits to Alfa's motion for a summary judgment before the trial court ruled on that motion. Even assuming no proper foundation was laid for the Health Care Authority's business records, the case was submitted on cross-motions for summary judgment in which each party asserted that there were no genuine issues of material fact. Further, Twin City states in its brief that, notwithstanding the allegedly inadmissible evidence submitted by Alfa, the motions for a summary judgment were submitted on materially undisputed facts, essentially stipulated to by Twin City and Alfa. The facts the documents submitted by Alfa attempt to prove were undisputed by the parties. We will not reverse the trial court's judgment on a technical error — here, the failure to grant a motion to strike unauthenticated exhibits — which is immaterial to the outcome of the only substantive issue in the case.
 II.
We now turn to the essential issue in this case: whether at the time of the accident Glass was operating a "covered auto" and, therefore, was an insured under the insurance policy issued to the Health Care Authority by Twin City.
Because the facts of this case are undisputed, the sole substantive issue before this Court requires us to determine the legal significance of the terms of the Twin City policy issued to the Health Care Authority.
A contract of insurance, like other contacts, is governed by the general rules of contracts. Pate v. Rollison Logging Equip., Inc.,628 So.2d 337 (Ala. 1993). Insurance companies are entitled to have their policy contract enforced as written. Gregory v. Western World Ins. Co.,481 So.2d 878 (Ala. 1985). "Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other *Page 692 
provisions." Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker Lowther, P.C., 703 So.2d 866, 870 (Ala. 1996).
If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction. American Foreign Ins. Co. v. Tee Jays Mfg. Co., 699 So.2d 1226 (Ala. 1997). The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous. Tate v. Allstate Ins. Co.,692 So.2d 822 (Ala. 1997). While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning. Kelley v. RoyalGlobe Ins. Co., 349 So.2d 561 (Ala. 1977). Where the parties disagree on whether the language in an insurance contract is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it. Western World Ins. Co.v. City of Tuscumbia, 612 So.2d 1159 (Ala. 1992).
We look first to the language of the relevant portions of the policy. The policy issued by Twin City to the Health Care Authority, in addition to the general liability coverage, contained an additional endorsement — HA 99160793 — which expanded the definition of an "insured" to include as an insured for liability coverage: "d. Any employee ofyours while using a covered auto you don't own, hire or borrow in yourbusiness or your personal affairs." (Emphasis added.)
In order to determine whether Twin City is obligated to pay benefits on behalf of Glass, we must determine whether Glass was an "insured" under the Twin City policy; that question requires that we determine whether she, as an employee of the Health Care Authority, was operating a "covered auto" on the date of the accident. Under the facts of this case, this in turn, is dependent upon whether her automobile was a "hired automobile" as it undisputedly was not owned by, or borrowed by, the Health Care Authority.
Where an insurance policy defines certain words or phrases, a court must defer to the definition provided by the policy. St. Paul Fire Marine Ins. Co. v. Edge Mem'l Hosp., 584 So.2d 1316 (Ala. 1991). The phrase "hired automobile" is not defined in the policy. If it was defined we would defer to the definition provided by the policy. St. Paul Fire Marine Ins. Co. v. Edge Mem'l Hosp., supra. Because it is not, we must determine the meaning of the phrase. An undefined word or phrase in an insurance policy does not create an inherent ambiguity. To the contrary, where questions arise as to the meaning of an undefined word or phrase, the court should simply give the undefined word or phrase the same meaning that a person of ordinary intelligence would give it. CarpetInstallation Supplies of Glenco v. Alfa Mut. Ins. Co., 628 So.2d 560
(Ala. 1993).
As we have noted, the ultimate result in this case is determined by deciding whether Glass's vehicle was a "hired auto." By the terms of the policy, the nonownership-liability coverage does not apply to automobiles hired by the Health Care Authority. It is Twin City's position that Glass's car was hired by the Health Care Authority and, therefore, that Glass's car does not come within the policy definition of "nonowned autos." Twin City argues that the following undisputed facts support its position that Glass's car was hired by the Health Care Authority: Glass was required to furnish her own transportation to perform her duties as a condition of her employment with the Health Care Authority; she was paid an hourly wage in compensation for performing her duties (Twin *Page 693 
City argues, that, logically, the wage paid to Glass necessarily included and contemplated that Glass was required to provide her own means of transportation to perform her job); and the Health Care Authority paid Glass an amount in addition to her compensation based upon the mileage Glass incurred in performing her job.
Twin City notes that Alabama appellate courts have previously decided two cases that addressed the issue of what constitutes a hired vehicle. The first case, Boyington v. American Liberty Insurance Co., 284 Ala. 581,226 So.2d 640 (1969), involved an insurance policy that contained an exclusion that provided that there would be no coverage while the insured's car was being used for towing any trailer owned or hired by the insured. The insured, Boyington, was in the business of hauling pulpwood. A pulpwood dealer hired Boyington to transport some pole-length pulpwood to a paper mill. Boyington needed a trailer to perform the job, but did not have one at his disposal. The pulpwood dealer provided a trailer for Boyington to use in transporting the pulpwood. Boyington did not pay or agree to pay the dealer for the use of the trailer, nor did Boyington "give or agree to pay any regard or emolument for such use."Boyington, 284 Ala. at 582, 226 So.2d at 641. While the trailer was attached to Boyington's truck and he was transporting the dealer's pulpwood, Boyington was involved in an accident with another automobile. Boyington's insurer relied upon the exclusion in its policy to deny coverage, claiming that Boyington had hired the trailer. This Court held that the exclusion was inapplicable. The Court noted that the facts indicated that Boyington did not hire the trailer, but obtained it for his convenience and for his own benefit and that of the pulpwood dealer. There was no extra charge for the use of the trailer. The pulpwood dealer paid Boyington a fixed sum per cord. The Court stated:
 "The benefits to both parties for such use did not, in our judgment, constitute a hiring within the purview of the policy. The word `hired' should be understood in its plain, ordinary and popular sense. Myers v. Ocean Accident Guarantee Corp., 99 F.2d 485 (4th Cir. 1938). Such word in its factual setting imports a monetary consideration or its equivalent. The proximate flow of benefits to either or both parties from such use is insufficient to convert the transaction into one of hiring within the purview of the policy."
Boyington, 284 Ala. at 583, 226 So.2d at 642-43 (emphasis added).
The second Alabama appellate decision relied on by Twin City is a decision by the Court of Civil Appeals, United States Fidelity GuarantyCo. v. Perry, 361 So.2d 594 (Ala.Civ.App. 1978), in which that court addressed the meaning of the term "hired auto." The general liability policy in Perry, unlike the one in the present case, defined the term "hired automobile":
 "`"Hired Automobile" means an automobile not owned by the named insured which is used under contract in behalf of or loaned to, the named insured, provided such automobile is not owned by or registered in the name of (a) a partner or executive officer of the named insured or (b) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile.'"
Perry, 361 So.2d at 596. The USFG policy also defined an insured to include "any other person while using . . . a hired automobile with the permission of the named insured. . . ." Id. In Perry, supra, two passengers were killed while riding in an automobile owned and driven by a coemployee, Ivey. The families of the two *Page 694 
passengers attempted to collect uninsured-motorist benefits under an automobile-liability-insurance policy issued to the employer by USFG, claiming that the passengers were insureds under the policies. On the day of the accident, Ivey and the passengers had been sent to gather loose cattle several miles away from their employer's farm. Because the employer did not have a vehicle available for their use, Ivey and the passengers used Ivey's automobile to drive to where the cattle were loose. The evidence indicated that "Ivey had the approval of his employer to use his automobile in the performance of his duties on occasions when the employer's vehicles were not available." 361 So.2d at 595. On these occasions, the employer furnished gas from his supply to Ivey. And, on this particular occasion, Ivey had filled the tank in his car before setting out to gather the loose cattle.
In holding that the passengers were not insureds under the employer's policy with USFG, the Court of Civil Appeals stated:
 "It is essential to plaintiffs' contention that the Ivey vehicle meet the policy definition of a hired automobile. We find it does not do so in at least two aspects. The evidence does not show either a contract for use in behalf of or a loan of the Ivey vehicle to or in behalf of the named insured."
361 So.2d at 597. Accord, Commercial Standard Ins. Co. v. GeneralTrucking Co., 423 So.2d 168, 170 (Ala. 1982) (where the policy at issue provided a specific definition of "hired automobile" as "an automobile not owned by the named insured which is used under contract in behalf of, or loaned to, the named insured. . .").
Twin City acknowledges that Boyington and Perry are not dispositive of the issue presented in this case. Twin City, however, argues that this Court should be persuaded by the decision of the Florida appellate court in Stonewall Insurance Co. v. Heter, 438 So.2d 950 (Fla.App. 1983). Heter had sustained personal injuries while driving his own car in the course of his employment with Buning the Florist, Inc. Buning carried several layers of automobile-liability insurance that provided uninsured-motorist benefits. Following his accident, Heter claimed he was an insured under Buning's insurance policies and that he was entitled to uninsured-motorist benefits based upon the following language from the policies' definition of an "insured":
 "A. Insured — the unqualified word `Insured' includes the Named Insured and also includes:
". . . .
 "(3) with respect to any automobile owned by the named insured or hired for use by or on behalf of the Named Insured, . . . . The insurance afforded by this subdivision (3), with respect to any person or organization other than the Named Insured does not apply:
". . . .
 "(c) with respect to any hired automobile, aircraft or watercraft, to the owner or lessee thereof, other than the Named Insured, or any employee of such owner or lessee."
Heter, 438 So.2d at 951-52. Like the Twin City policy at issue in the present case, the employer's policy in Heter did not define the phrase "hired automobile."
In Heter, supra, the undisputed facts also demonstrated that Heter's "employer required [Heter] to use his personal automobile to drive to various suppliers to purchase flowers and that his employer promised to pay for repairs and maintenance to the vehicle as well as fuel necessary for its operation." 438 So.2d at 951. *Page 695 
In holding that the employer had hired Heter's automobile, the Florida court reasoned:
 "[Heter] relied upon Trinity Universal Insurance Co. v. Cincinnati Insurance Co., 513 F.2d 915 (6th Cir. 1975) and USF G v. Perry, 361 So.2d 594 (Ala. [Civ.] App. 1978), in which the courts held that the mere provision of gasoline for an employee's vehicle used in company business did not make the car a hired vehicle for insurance purposes. In those cases, however, the company use of the car was occasional and non-compulsory. Here, Buning required [Heter] to supply a car for daily company use as a condition of employment. The record demonstrates sufficient evidence to support the trial court's conclusion that [Heter's] automobile constituted a `hired vehicle' within the meaning of the policy."
Heter, 438 So.2d at 952.
Twin City argues that just as in Heter, supra, the Health Care Authority's use of Glass's car was not occasional and noncompulsory. To the contrary, the Health Care Authority required Glass to supply her own car for daily use to perform her duties on behalf of the Health Care Authority as a condition of her employment. We decline to adopt the holding of the Florida appellate court in Heter, supra, that the regular and compulsory use by an employee of his own vehicle in carrying out the business of his employer as a condition of employment constitutes the "hire" by the employer of the employee's automobile.
Twin City drafted the automobile liability policy we are construing here. It could have defined the term "hired automobile"; it did not, so we must define it. In doing so in the context of the facts of this particular case, we are mindful of some general principles applicable when construing insurance contracts. A contract of insurance will be construed strictly against the insurer and liberally in favor of the insured. Ambiguous provisions of an insurance policy will be construed most strongly against the insurer and in favor of the insured. Life Ins. Co.of Georgia v. Miller, 296 So.2d 900 (Ala. 1974). In this case, Twin City argues that Glass is excepted from coverage under its policy. Exceptions to coverage in a policy of insurance must be interpreted as narrowly as possible in order to provide maximum coverage of the insured. EmployersIns. Co. of Alabama, Inc. v. Jeff Gin Co., 378 So.2d 693 (Ala. 1979).
The fact that the dispute over terms in an insurance policy is between two insurance companies — in this case, Twin City and Alfa — does not alter the rule that an ambiguity in an insurance contract should be interpreted in favor of the insured and against the insurer.Commercial Standard Ins. Co. v. General Trucking Co., 423 So.2d 168
(Ala. 1982). Even in an action involving a dispute between two or more insurers, where the court concludes that an insurance contract is ambiguous as to a condition of, an exclusion from, or a limitation on, coverage or liability, it must construe the ambiguity against the insurer that drafted the policy. Scottsdale Ins. Co. v. National Sec. Fire Cas. Ins. Co., 741 So.2d 424 (Ala.Civ.App. 1999). As the Florida appellate court noted, an ambiguity arises when more than one interpretation may fairly be given to a policy provision. Gilmore v. St.Paul Fire Marine, 708 So.2d 679 (Fla.Dist.Ct.App. 1998).
Twin City, the drafter of the policy, insists that Glass was not driving a "covered auto" and that she was not an "insured," because, it asserts, the Health Care Authority had "hired" her automobile from her. Twin City did not define the *Page 696 
term "hired automobile" in its policy, and although Twin City argues that its policy provisions are unambiguous, its failure to define "hired automobile" undoubtedly resulted in multiple interpretations of its "hired-auto" exclusion.
Mindful of these principles, this Court must determine the meaning of "hired automobile." Twin City argues that because Glass was required to furnish her own transportation as a condition of employment, because her base pay was set based upon this condition of employment, and because she was reimbursed for the number of miles she traveled in carrying out her duties for her employers, her personal automobile was "hired" by her employer, the Health Care Authority. We do not find that such a factual scenario describes a "hired automobile" in its plain, ordinary, and popular sense.
Certainly "monetary consideration or its equivalent" is one necessary component of a reasonable definition of "hired automobile." SeeBoyington, supra. Certainly, more than occasional use of the automobile is necessary. Compulsory rather than noncompulsory use of an automobile would be a factor to be considered. We have, however, already rejected these factors individually as defining a "hired automobile." Even these three factors combined, without more, do not meet an ordinary man's definition of "hired automobile."
Further, a number of state appellate courts have held that the payment of a mileage reimbursement for the use of an employee's personal vehicle in the course of his or her employment did not constitute a lease, rent, or hire of the motor vehicle. See Gore v. State Farm Mut. Ins. Co.,649 So.2d 162 (La.Ct.App. 1995); Johnson v. Continental Cas. Co.,167 So. 114 (La.Ct.App. 1936); Insurance Co. of North America v. StateFarm Mut. Auto. Ins. Co., 663 P.2d 953 (Alaska 1983); Griffin v.Travelers Indem. Co. of Rhode Island, 4 S.W.3d 915 (Tex.App. 1999); andNational Indem. Co. v. Liberty Mut. Ins. Co., 513 S.W.2d 461 (Mo. 1974). We agree that the reimbursement of mileage for the use of an employee's personal vehicle in the course of his or her employment, even where use of one's personal vehicle is a condition of employment, is merely a reimbursement of expenses, not a "hiring" of the employee's automobile.
We find that a better definition is that adopted by the 5th Circuit Court of Appeals: "[F]or a vehicle to constitute a hired automobile, there must be a separate contract by which the vehicle is hired or leased to the named insured for his exclusive use or control." Sprow v. HartfordIns. Co., 594 F.2d 418, 422 (5th Cir. 1979). See also Toops v. Gulf CoastMarine, Inc., 72 F.3d 483 (5th Cir. 1996). Even the Perry, supra, andCommercial Standard, supra, cases cited by Twin City refer to "a contract for use" in describing what constitutes a "hired automobile."
In the present case, we do not believe that the requirement that Glass provide her own transportation as a condition of employment, that her base wage was arguably based upon the requirement that she provide her own transportation, and that she received a mileage reimbursement for miles driven in the course of her employment, made Glass's vehicle a "hired automobile." The Health Care Authority had no separate contract with Glass for the use or "hire" of her automobile. Furthermore, her vehicle was not under the exclusive use or control of the Health Care Authority. These two criteria are necessary to meet a reasonable man's definition of "hired automobile" in a case such as this one, where the insurance policy does not define that term. *Page 697 
Because Glass's automobile was not a "hired automobile," it was a "covered auto" under the terms of the policy. The subject policy includes "nonowned autos," which are defined as: "only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes autos owned by your employees or partners or members of their households but only while used in your business or your personal affairs." As to whether Glass was an insured, we must refer to the definition of "insured" in endorsement #HA99160793, which was an endorsement acquired by the Health Care Authority. The endorsement provides broader benefits than the base policy by adding the following: "WHO IS AN INSURED — OF SECTION II — LIABILITY COVERAGE is amended to add: d. any employee of yours while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs."
As we have stated, the policy must be construed against the drafter, Twin City. A reasonable interpretation of this rider to the policy is that an employee of the Health Care Authority is to be considered an insured person under the policy and covered to the extent of the $1,000,000 liability coverage while the employee was using a covered automobile in the Authority's business, unless the automobile was hired by the Health Care Authority.
Because Twin City failed to define its relevant policy terms, the policy is unclear and subject to different interpretations; therefore, it is appropriate for us to interpret this term in favor of Glass. In doing so we have given the term "hired automobile" its plain, reasonable, and ordinary meaning. We find that Glass is not subject to the exclusion, as Twin City asserts, because the Health Care Authority did not hire her vehicle.
Twin City also argues that the liability it is subjected to if we decide in Glass's favor is not what they contemplated in undertaking the risk. They say that they took into consideration that Glass would have her own insurance and that they would assert the statutory cap on liability provided by § 11-93-2, Ala. Code 1975, if a claim ever arose. An insurance company's underwriting hopes concerning the possible payment of future claims is not a factor for courts to consider in deciding coverage disputes. Courts must make their determinations based upon the terms and language included in the policy.
Twin City has the burden of proof in asserting that a claim is excluded under its policy of insurance. It has failed to meet that burden. Glass was an insured driving a covered automobile on the occasion of the accident, and she is entitled to coverage under Twin City's policy. In this dispute, Alfa stands in the shoes of Glass. The trial court properly entered a summary judgment in favor of Alfa and its decision is due to be affirmed.
AFFIRMED.
Moore, C.J., and See, Brown, and Harwood, JJ., concur.
[1] The record gives no indication of the full name of this insurer.
[2] Section 11-93-2 limits the recovery of damages under a judgment against a governmental entity to $100,000 for bodily injury to, or the death, of one person in any single occurrence.
[3] Alfa did not pursue this latter argument in its brief before this Court. It instead argues that Glass was an insured under the Health Care Authority's policy issued by Twin City.