[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10539

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 8, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-01060-CV-AR-S

MEGA LIFE AND HEALTH INSURANCE COMPANY, THE,

                                        Plaintiff-Counter-Defendant-
                                        Appellant Cross-Appellee,

versus

DONALD D. PIENIOZEK, individually and as administrator
of the Estate of Kellie O. Pieniozek, Deceased,

                                        Defendant-Counter Claimant-
                                        Appellee Cross-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

**(February 8, 2008)**

Before BIRCH, CARNES and COX, Circuit Judges.

PER CURIAM:

I.      Overview

The primary issue in this case is whether MEGA Life and Health Insurance Company ("MEGA") can rescind a life insurance policy issued by it on the ground that the insured overstated her income in the application for the policy. We conclude that there are genuine issues of material fact as to whether MEGA had a good faith underwriting policy which would have caused it to reject her application, or reduce the amount of coverage afforded, had it had known the insured's true income. We also conclude that the district court properly determined that an "autopsy" was performed within the meaning of the policy's "accidental death and dismemberment" ("AD&D") rider.

II.     Facts

In September 2004, Kellie O. Pieniozek ("Mrs. Pieniozek") applied for a life insurance policy on her life to be issued by MEGA. Mrs. Pieniozek also applied for AD&D coverage. Ahmed Waliagha, a MEGA agent, filled out Mrs. Pieniozek's application based on her answers to questions he asked her.

Mrs. Pieniozek told Waliagha that she was earning $700 per week, and on this basis Waliagha recorded an annual income of $35,000 on the application. The application provided:

I/we, the Primary Proposed Insured (and any Additional Insured or Owner signing below), by my signature set forth hereafter agree to the following: (a) All Statements and answers in this application are complete and true to the best of my knowledge and belief.

(R.2-17 Ex. A at 3.) Mrs. Pieniozek signed the application.

After receiving the application, MEGA issued Mrs. Pieniozek a policy with a death benefit of $500,000[1] and an AD&D benefit of $300,000. In the AD&D rider, MEGA promised to pay $300,000 upon Mrs. Pieniozek's death if death was "directly caused by an accidental bodily Injury, independent of all other causes, which is supported by an autopsy (except in the case of drowning or of internal injuries revealed by an autopsy, or smoke inhalation due to fire)." (R.2-17 Ex. D at 2.) Neither the AD&D rider, nor any other provisions of the policy, defined the word "autopsy." The policy named Mrs. Pieniozek's husband, Donald D. Pieniozek ("Mr. Pieniozek"), as beneficiary. The policy provided:

The attached application is a part of this Policy. Please read it and check it carefully. This Policy is issued on the basis that Your answers are correct and complete. If it is not complete or has an error, please let us know within 10 days. An incorrect application may cause Your coverage to be voided, or a claim to be reduced or denied.

(R.2-17 Ex. D at 1.)

---

[1]Mr. Pieniozek had requested a $1 million policy for his wife, but Waliagha told him that this amount probably would not be approved, because they did not earn a high enough income. (R.1-40 Ex. AA at 35-36.)

3

Mrs. Pieniozek died on December 14, 2004, in a single-car automobile accident, when the car that she was driving veered into a ditch as she swerved to avoid striking a deer. Mr. Pieniozek was a passenger in the car when the accident occurred. MEGA does not contend that there was suicide or foul play. The report conducted by the county coroner, Doug Ballard, Jr., indicated that the cause of Mrs. Pieniozek's death was "closed head trauma" resulting from a motor vehicle accident, noting that she suffered an "open fracture to the head," in addition to "other injuries from [the accident]." (R.2-17 Ex. E.) Mrs. Pieniozek's body was cremated on December 16, 2004.

Mr. Pieniozek filed a claim with MEGA on January 17, 2005. During its routine investigation into the claim, MEGA discovered that Mrs. Pieniozek was earning much less than the $700 per week she had claimed; in reality, she had a total income of $670.13 in the period from August 2004 to October 2004. The Pieniozeks' joint income in 2004 was $16,561.

According to Sandra M. King, a MEGA underwriter, Mrs. Pieniozek did not qualify for the policy she received, and MEGA's underwriting guidelines limit the amount of a death benefit to fifteen times the proposed insured's income. King says that if she had known Mrs. Pieniozek's income, she would have recommended a

different policy, with maximum coverage of $60,300. MEGA declined to pay Mr. Pieniozek any insurance proceeds.

III.    Procedural History

MEGA sued Mr. Pieniozek, individually and as administrator of Mrs. Pieniozek's estate,[2] in the Northern District of Alabama, seeking a declaratory judgment that the policy should be rescinded due to Mrs. Pieniozek's misrepresentation of her income. MEGA also sought a declaration that the death benefit under the AD&D rider was not payable because the cause of death was not established by an autopsy (hereinafter the "construction of the policy claim").

MEGA moved for summary judgment on its claims. Mr. Pieniozek counterclaimed, asserting a claim for breach of contract and a tort claim grounded upon bad faith refusal to pay. Both Mr. Pieniozek and MEGA moved for summary judgment on Mr. Pieniozek's counterclaims. The district court granted Mr. Pieniozek's motion for summary judgment on both MEGA's rescission claim and its construction of the policy claim. It also granted Mr. Pieniozek's motion for summary judgment on his breach of contract counterclaim and granted MEGA's motion for summary judgment on his bad faith counterclaim.

---

[2]The district court determined that Mr. Pieniozek had not been appointed administrator of the estate of Mrs. Pieniozek, and no one questions that determination on this appeal. We therefore DISMISS Mr. Pieniozek, in his capacity as administrator, as a party to the appeal.

5

MEGA appealed, and Mr. Pieniozek cross-appealed.

IV.    Discussion

A.    MEGA's Rescission Claim

MEGA contends that the district court erred in granting Mr. Pieniozek's motion for summary judgment on its rescission claim. Under Alabama Code § 27-14-7(a), misrepresentations and incorrect statements do not prevent recovery under an insurance policy unless:

(1) Fraudulent;

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code § 27-14-7(a) (LexisNexis 1998). MEGA seeks rescission under (a)(3), arguing that it would have reduced the coverage available to Mrs. Pieniozek had she provided her correct income.[3]

---

[3]MEGA originally sought rescission under section 27-14-7(a)(2) as well, arguing that Mrs. Pieniozek's misrepresentation of her income was material to its risk of loss in insuring her. The district court rejected this argument. MEGA does not raise this issue on appeal.

6

The district court held that, in order to be eligible for rescission or reduction of coverage under (a)(3), "MEGA must provide what it has not provided, namely, a rational basis for how its risk varied with Mrs. Pieniozek's income . . . ." (R.1-46 at 11). The court found that such a rational basis was "conspicuously absent," and held that MEGA had not presented a prima facie case on this issue, and granted summary judgment in favor of Mr. Pieniozek. (R.1-46 at 11-12.)

We review a district court's grant of summary judgment de novo. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).

A district court's interpretation of a state statute is reviewed de novo. *Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1294 (11th Cir. 2002). Alabama decisions involving (a)(3) do not mention a "rational basis" requirement. To avoid summary judgment under (a)(3), an insurer "need only have presented evidence that the [insured] made the misrepresentation, and that [it] would not have issued the [] policy had it known the actual facts." *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1544 (11th Cir. 1994). "An insurance company does not normally have a duty to

7

inquire further to verify that an applicant has told it the truth." *Old S. Life Ins. Co. v. Spann*, 472 So. 2d 987, 989 (Ala. 1985).

The Alabama Supreme Court holds that, in order for an underwriting policy to be in "good faith" under (a)(3) and eligible for rescission, the policy in question need only be universally applied. "[T]he only question [with regard to section 27-14-7(a)(3)] is the good faith of the insurer in refusing to issue the policy . . . . Because the practice of not issuing a policy to anyone employed less than 30 hours per week appears to be universally applied by [the insurer], and thus not susceptible to a badfaith [sic] implementation, we hold that § 27-14-7 provides a ground for rescission . . . ." *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1275 (Ala. 1993).

Mr. Pieniozek argues that the district court was correct in holding that (a)(3) impliedly requires that the insurer's basis for rescission under (a)(3) be rational. MEGA contends that the statute and related case law contain no such requirement. We are cited no authority that supports the district court's holding that (a)(3) requires that an insurer have a rational basis for the underwriting policy at issue. Rather, (a)(3) contains only a "good faith" requirement.

Mr. Pieniozek argues that summary judgment in his favor should be affirmed because MEGA can point to no document with its name on it that articulates a policy of tying coverage to an applicant's income. In fact, nothing in the MEGA Agent

8

Guide mentions an income multiplier. MEGA counters that it has advanced sufficient evidence, through deposition and affidavit testimony, that it did have such a policy, even if it could not point to a specific document with "MEGA" written on it.

We conclude that MEGA advanced sufficient evidence to survive summary judgment on the issue of whether it would have declined, in good faith, to issue the policy to Mrs. Pieniozek if it had known her true income. In her deposition, Charmaine Hopkins, MEGA's Chief Underwriter, pointed to documents from Canada Life Reinsurance ("the Canada Life guidelines"), and testified that they were used as underwriting guidelines for MEGA. The Canada Life guidelines state that an income of $35,000 "may be multiplied [by thirty] to arrive at a ballpark figure for maximum amount of personal insurance." (R.1-35 Ex. Y.)

Hopkins also testified that Chesapeake Life is MEGA's sister company, and it is MEGA policy to follow Chesapeake Life's underwriting guidelines ("the Chesapeake guidelines"). (R.2-30 at 88-89.) The Chesapeake guidelines do not have mandatory language: "The following financial guide is intended to assist you in determining maximum coverage. Please refer to the guide often as it will provide a means of anticipating the Underwriting Requirements for all large amount cases you write." (R.2-30 Ex. 7 at 2.) For Mrs. Pieniozek's income range, the Chesapeake guidelines provide that she would have qualified for coverage in the amount of up to

fifteen times her income, which is half the amount allowed by the Canada Life guidelines.

Waliagha, the agent, testified, "If your income [is] $100,000 a year, I can write the policy on you between seven to 15 times to cover your income." (R.1-35 Ex. X at 88.) And, he testified that he advised Mrs. Pieniozek that her income disqualified her from the $1 million policy that she requested.

MEGA contends that it is entitled to summary judgment on this issue. We disagree. Existence of an underwriting policy is a question on which MEGA bears the burden of proof. While MEGA has advanced sufficient evidence to avoid summary judgment against it, we hold that a reasonable fact-finder could determine that MEGA did not have a policy limiting coverage to 15 times an applicant's annual income. The fact that MEGA can point to no document bearing its name, coupled with the fact that it identifies two different documents from different insurance companies in attempting to establish its underwriting guidelines, undermines the testimony that MEGA had underwriting guidelines which were universally applied.

We can envision a rational basis for tying the amount of coverage to annual income, but this does not end the inquiry. Certainly, the issue of whether there is a rational basis for an insurance company's underwriting policy, while not dispositive, is relevant evidence in a factual determination of whether the underwriting policy

existed in the first place, and MEGA's summary judgment motion was not supported by testimony articulating a rational basis for the policy. These circumstances, considered collectively, mean that a fact-finder must decide whether MEGA had such a policy, and whether it would have, in good faith, declined to issue the policy or reduced the amount of Mrs. Pieniozek's coverage if it had known her true income.

B.      Construction of the Policy Claim

MEGA contends that Mr. Pieniozek should not recover under the policy's $300,000 AD&D rider because no "autopsy" was performed. After considering the common meanings of "autopsy," the district court construed the contractual language against MEGA, the drafter, held that the coroner's investigation and report constituted an "autopsy," and granted summary judgment for Mr. Pieniozek.

The coroner, Ballard, performed a post-mortem examination and indicated that Mrs. Pieniozek died of "closed head trauma" as a result of a motor vehicle accident. (R.2-17 Ex. E.) His report says that no autopsy was performed, and he testified that he did not perform an autopsy. In fact, Ballard testified that he is not qualified to perform either type of autopsy authorized by the Alabama Department of Forensic Sciences. He testified that he did not request that an autopsy be performed on Mrs. Pieniozek's body because everybody involved, including himself, the hospital, and law enforcement, agreed that her death was accidental.

11

MEGA argues that the language in the AD&D rider, which provides a death benefit in the event of "accidental bodily injury, *independent of all other causes, which is supported by an autopsy*" (R.2-17 Ex. D at 2) (emphasis added), proves that the parties contemplated that this "autopsy" would rule out *all* other causes of death. Ballard testified that his examination did not rule out other potential causes of death, such as heart attack, cardiac arrest, stroke, aneurysm, or blood clot. Essentially, MEGA contends that the language in the AD&D rider was unambiguous and that it is entitled to summary judgment on this issue.

"The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 308 (Ala. 1999). In determining whether a term is ambiguous, "an isolated sentence of the policy should not be construed alone, but in connection with other provisions of the said policy in order to arrive at a construction reasonably calculated to accomplish the intent and purpose of the parties." *N. River Ins. Co. v. Jackson*, 179 So. 2d 731, 733 (Ala. 1965).

"[W]here questions arise as to the meaning of an undefined word or phrase, the court should simply give the undefined word or phrase the same meaning that a person of ordinary intelligence would give it." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001). This means that we should give the

12

disputed term the meaning that "a reasonably prudent person applying for insurance would have understood," *Slade*, 747 So. 2d at 308, and the term's "customary and normal meaning." *Sullivan v. State Farm Mut. Auto. Ins. Co.*, 513 So. 2d 992, 994 (Ala. 1987).

Since MEGA did not attempt to define "autopsy" in the AD&D rider, we, like the district court, look to common dictionary definitions in order to determine the customary and normal meaning of "autopsy" that a reasonably prudent person applying for insurance would understand. Some definitions include only a comprehensive, internal examination, *see* Oxford English Dictionary (2d ed. 1989) ("[d]issection of a dead body, so as to ascertain by actual inspection its internal structure, and *esp.* to find out the cause or seat of disease; post-mortem examination"), while others require only a post-mortem examination, such as the one performed here, *see* Webster's Third New International Dictionary (1981) ("post-mortem examination, necropsy").

Even though "[a]n undefined word or phrase in an insurance policy does not create an inherent ambiguity," *Twin City*, 817 So. 2d at 692, we nevertheless hold that the term "autopsy" in the AD&D rider presents an ambiguity in its terms. It is unclear whether a reasonably prudent person applying for insurance would have understood "autopsy" to mean either a full dissection or, on the other hand, a post-mortem

13

examination. "The terms of an insurance policy are ambiguous only if the policy's provisions are reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning." *Slade*, 747 So. 2d at 308-09. Since "autopsy" here is susceptible to two general constructions, we hold that the district court properly determined that it was ambiguous as a matter of law.

As an alternative to granting it summary judgment on this issue, MEGA urges us to remand to the fact-finder the question of whether an "autopsy," within the meaning of the AD&D rider, was performed. In support of its position, MEGA cites *Extermitech, Inc. v. Glasscock, Inc.*, where the Alabama Supreme Court said, "Where factual issues arise, the resolution of the ambiguity becomes a task for the jury." 951 So. 2d 689, 695 (Ala. 2006) (quoting *Alfa Life Ins. Corp. v. Johnson*, 822 So. 2d 400, 404-05 (Ala. 2001)) (internal quotation marks omitted).

The existence of an ambiguity in a contractual term, however, does not automatically require that we remand for the fact-finder to resolve the ambiguity. "[I]f the trial court finds the contract to be ambiguous, it 'must employ established rules of contract construction to resolve the ambiguity.' *If the application of such rules is not sufficient to resolve the ambiguity, . . . the resolution of the ambiguity becomes a task for the jury.*" *Johnson*, 822 So. 2d at 405 (emphasis added) (citations omitted); *see also Extermitech*, 951 So. 2d at 694 ("Some of this Court's decisions indicate that,

14

once the court determines that a contract is ambiguous, it is for the finder of fact to resolve the ambiguity. However, . . . the court, as a matter of law, should apply rules of construction and attempt to resolve any ambiguity in the contract before looking to factual issues to resolve the ambiguity."); *Am. & Foreign Ins. Co. v. Tee Jays Mfg. Co.*, 699 So. 2d 1226, 1228 (Ala. 1997) ("If the policy is unclear and ambiguous in its terms, . . . then it must be interpreted and construed under well-settled rules of construction applicable to all contracts."); *Vesta Fire Ins. Corp. v. Liberty Nat'l Life Ins. Co.*, 893 So. 2d 395, 404 (Ala. Civ. App. 2003) ("[A] court is to evaluate the contract on its face and apply rules of contract construction in an effort to resolve ambiguities before submitting the case to a jury."). "It is . . . the province of the court, not the jury, to construe a policy, even though ambiguous and unclear . . . ." *Home Indem. Co. v. Employers Nat'l Ins. Corp.*, 564 So. 2d 945, 947 (Ala. 1990) (quoting *Upton v. Miss. Valley Title Ins. Co.*, 469 So. 2d 548, 555 (Ala. 1985)) (emphasis omitted) (internal quotation marks omitted).

Any ambiguity in an insurance contract should be strictly construed against the drafter and liberally in favor of the insured. *See Twin City*, 817 So. 2d at 695; *Home Indem.*, 564 So. 2d at 947; *Guaranty Nat'l Ins. Co. v. Marshall County Bd. of Educ.*, 540 So. 2d 745, 748 (Ala. 1989); 2 Eric Mills Holmes & Mark S. Rhodes, *Holmes's Appleman on Insurance* § 6.1 (2d ed. 1996). The district court properly applied rules

of contract construction in construing the meaning of "autopsy" against MEGA. Since doing so resolved the ambiguity, assistance from a fact-finder was not necessary and summary judgment on this issue was appropriate. Ballard determined that the cause of Mrs. Pieniozek's death was head trauma resulting from the automobile accident. Even though Ballard did not consider his examination to be an "autopsy," MEGA's AD&D rider did not incorporate his conception of the term. If MEGA wanted to require a more comprehensive, definitive definition of "autopsy," it should have defined the word "autopsy" in the AD&D rider. It did not do so. MEGA cannot argue that an "autopsy" was not performed according to an accepted definition of the term. MEGA's argument that there was no "autopsy" performed does not preclude Mr. Pieniozek's recovery under the AD&D rider.

### C. Mr. Pieniozek's Bad Faith Counterclaim

Mr. Pieniozek alleges that MEGA committed the tort of bad faith when it refused to pay him the proceeds of Mrs. Pieniozek's life insurance policy. The district court dismissed this claim, because Mr. Pieniozek's "claim for breach of contract is fairly debatable . . . ." (R.1-46 at 15.) We find no error in the district court's decision. Liability was fairly debatable, and MEGA did not commit the tort of bad faith in denying the claim.

V.    Conclusion

For the foregoing reasons, we vacate summary judgment in favor of Mr. Pieniozek on MEGA's rescission claim and affirm summary judgment in his favor on MEGA's construction of the policy claim. We affirm summary judgment for MEGA on Mr. Pieniozek's bad faith claim. We remand for further proceedings consistent with this opinion.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.