8]                JANUARY TERM, 1928.                615

Blue Mound F. S. Co. v. Farmers' M. F. Ins. Co. 195 Wis. 615.

BLUE MOUND FARM SUPPLY COMPANY, Respondent, vs.
FARMERS' MUTUAL FIRE INSURANCE COMPANY, Appellant.

*April 4—May 8, 1928.*

*Insurance: Use of premises: Cooking food on hog farm as manufacturing process: Temporary unauthorized use of premises: Suspension and reinstatement of policy.*

1. In an action to recover on a mutual fire policy covering farm buildings, the operation of a cooker in a farm building to prepare necessary food in operating a hog farm did not constitute a manufacturing process, converting the building containing the cooker into a rendering plant, and did not prevent recovery on the policy under sub. (1) (c) and sub. (2), sec. 202.06, Stats. 1927, requiring the building to be located on a farm and used primarily for farm purposes, where the grease and tallow extracted by the cooker and sold in the open market were incidental to the operation of the farm.  pp. 620, 623.

2. Such use of the building by subtenants, if contrary to the terms of the policy and to the statutes, did not prevent recovery where the use was merely temporary, not changing the character of the buildings, in no way contributing to the fire loss, and was in fact discontinued two years before the loss, although the subletting was without the knowledge or consent of the insured or the insurer, such use merely suspending the policy, which was automatically reinstated when the use was discontinued.  pp. 623, 624.

APPEAL from a judgment of the circuit court for Milwaukee county: AUGUST E. BRAUN, Circuit Judge. *Affirmed.*

Action begun October 22, 1925. Judgment entered November 23, 1927.

The action was brought by the plaintiff, a Wisconsin corporation, against the defendant, a town mutual fire insurance company of Milwaukee county, Wisconsin, to recover damages resulting from a fire loss covered by defendant's policy. The defendant denies liability under said policy, and claims that the policy was voided by the use of the premises insured for purposes contrary to the provisions of the policy and the statutory provisions of law relating thereto.

The case was tried by the court without a jury, and following are substantially its findings of fact:

"3. That the plaintiff duly applied to the defendant for a policy of fire insurance upon its buildings so located, and pursuant thereto the said defendant's agent personally inspected, examined, and learned the uses and purposes of the same, and prepared the written application for such policy upon the printed form furnished by the defendant, and therein described such buildings and fixed their dimensions and location respectively upon a plat in said application and placed the insured value upon each thereof, and noted thereon that the farm was occupied by a tenant. The plaintiff properly signed the application and thereafter, and on the 9th day of December, 1920, the said defendant duly executed and delivered to the plaintiff its policy of insurance No. 6699, wherein and whereby, for value received, it insured the said farm buildings against loss by fire as follows:

| | |
|---|---|
| Sheep shed | $400 |
| Cattle-hog barn and cooker | 2,000 |
| Cattle and hog barn | 1,400 |
| Brood barn | 200 |

until the 9th day of December, 1925.

"4. That by the issuance of said policy plaintiff became a member of defendant; that in consideration of the insurance applied for, plaintiff gave an undertaking, set forth in the application, binding itself to pay its *pro rata* share of necessary business expenses of defendant and of losses and damages by fire or lightning sustained by any member of defendant; that the plaintiff, as an insured member of defendant, carried and sustained such liability over four years from the date of the policy to the time of the fire, and paid all of the assessments made against it and had fully complied with all its obligations in that respect.

"5. That, on the afternoon of April 14, 1925, a fire, originating in some box-cars on the railroad track crossing said farm south of said buildings, spread to and totally destroyed three of said buildings, viz.: the sheep shed, the cattle-hog barn and cooker, and the cattle and hog barn, so insured for a total sum of thirty-eight hundred dollars ($3,800); that the other insured building, the brood barn, was not damaged.

"6. That the plaintiff duly and promptly notified the de-

fendant of said fire; that the defendant's officers inspected and examined the premises and loss and denied all liability under the policy.

"7. That at and before the date of said policy, one Babich, as tenant, had operated the said farm, consisting of 112½ acres, and used the said farm and buildings to raise various crops, cattle, sheep, poultry, and a large number of hogs, requiring the use of the 'cooker' covered by said policy to properly prepare food for the hogs; that he continued so to do until the latter part of 1921, when hog cholera killed most of the hogs, and the cooker was not used after the fall of 1922; that said tenant, wholly without the knowledge or consent of the plaintiff, some time in April and May, 1922, permitted Slafsky and Kamasar to attempt to operate the 'cooker' to render tallow and grease from butcher's scraps and packer's waste, which, proving unsuccessful because not adaptable, was abandoned after a month to a month and a half, during which time only one quantity of tallow was made and disposed of; that this operation terminated some two years prior to the fire and in no way contributed to the fire loss or increased the hazard or risk under said policy.

"8. That in the summer of 1922, a year and a half before the fire, this tenant, without plaintiff's knowledge, sublet the small 'brood barn' building to one Schultz, who had it about two months and rendered a small quantity of tallow on a small stove installed by him in the building, which use in no way contributed to the fire loss or increased the hazard or risk under the policy; that this building was not burned, and no claim is involved for the insurance thereon.

"8–a. That for the preparation of food for said hogs said Babich procured garbage and waste from several hotels in Milwaukee and from Soldiers' Home and cooked it in said cooker; that incidental to and as a by-product from cooking said garbage and waste, a quantity of tallow and grease was rendered which was sold upon the open market.

"8–b. That the rendering of tallow and grease by said Slafsky and Kamasar and also by said Schultz was without the knowledge or consent of the defendant, its officers or agents.

"9. That the buildings insured were not 'so altered or . . . appropriated, applied, or used to or for the purpose of carrying on or exercising therein any trade, business, or

vocation, which, according to the by-laws and conditions, class of hazards or rates,' as set forth in the policy, as to increase the hazard under the policy; that the clause quoted from is the only clause in the policy under which defense was relied upon; that no change in the location of said buildings was ever made which changed the class of such buildings by increasing the risk, which said classes are set forth in the policy."

### "Conclusions of law.

"1. That the plaintiff has kept and observed all the requirements of the policy upon their part; that the buildings insured were properly farm buildings and the subject of binding insurance under the defendant's charter and the laws of this state pertinent thereto.

"2. That no use of the insured or destroyed buildings by the plaintiff or by the tenant or by the subtenants with or without the knowledge of plaintiff constituted a breach of the insurance policy.

"3. That the defendant, having over a period of more than four years accepted and retained the benefits of the contract and the contract having been wholly executed on the part of the plaintiff, is estopped from asserting any defense of *ultra vires* in this action.

"4. That the plaintiff is entitled to judgment herein for the sum of thirty-eight hundred dollars ($3,800) and interest thereon at the legal rate from April 14, 1925, the date of the fire, the defendant having denied all liability, together with the costs and disbursements herein."

Judgment having been entered in accordance with the foregoing findings of fact and conclusions of law, the defendant has prosecuted this appeal. Further facts will be found in the opinion.

*G. J. Davelaar,* for the appellant.

For the respondent there was a brief by *T. H. Gill* and *Walter Drew,* both of Milwaukee, and oral argument by *Mr. Drew.*

DOERFLER, J. The buildings in question were expressly designed to serve the purpose of farm structures. There was a sheep shed, two cattle and hog barns, and a brood shed.

The very names of these buildings, located upon a farm of 112 acres, suggest that they are structures used in and connected with the operation of a farm. It is commonly known that farms are used for a variety of purposes. Some farms are primarily used for the raising of grain or corn; others are known as dairy farms; and still others are utilized for the raising of live stock to be sold upon the market. It is also commonly known at the present time that farmers are accustomed to utilize their soil for the growing of crops to be fed to the cattle raised upon the farm; that for economy's sake everything that is available and suitable for food of cattle is utilized. In the instant case the plaintiff corporation was composed of stockholders who were owners of large hotels in the city of Milwaukee, and the idea was conceived by them to use the waste products of the hotels, after being properly treated, as food to be fed to hogs to be raised upon the farm. With this idea in view, they leased the premises to a tenant by the name of Babich, who operated the farm, and in one of the large cattle and hog barns a large cooker was installed, five feet in diameter and twelve feet in depth. On an average four wagon loads of this waste product were delivered to the farm daily, dumped into this cooker, and there treated by steam for a definite period of time, with the result that the grease and tallow were extracted from the waste, and such grease and tallow were then sold upon the open market, and the balance of the waste was used as food for the hogs.

Under the facts thus stated, it was claimed by defendant's counsel that the operation of this cooker constituted a manufacturing process, and converted the cattle and hog barn containing the cooker into a rendering plant, in contravention not only of the statutes of the state of Wisconsin applicable to town mutual fire insurance companies, but also of the provisions of the policy and the by-laws of the company. The testimony, however, clearly discloses that the main purpose of the tenant in operating the cooker was to obtain the

necessary food in the operation of his hog farm, and that the extraction of the grease and tallow was a mere incident in the operation of the farm, and not the principal object and purpose in the utilization of this waste.  There are few economic farms anywhere in the country where a similar process is not used to a greater or lesser extent, depending largely upon the nature and amount of the live stock raised upon the farm and the area of the farm itself.  The record discloses ample evidence supporting the findings of the court to the effect that the production of the grease and tallow which was sold in the open market constituted a mere incident to the operation of the farm and the utilization of the buildings thereon.  In other words, the character of the buildings as farm buildings had not undergone a substantial change.

Counsel for the defendant relies largely upon *O'Neill v. Pleasant Prairie Mut. F. Ins. Co.* 71 Wis. 621, 38 N. W. 345, and *Luthe v. Farmers Mut. F. Ins. Co.* 55 Wis. 543, 13 N. W. 490.  In the *O'Neill Case* a loss occurred in the destruction by fire of a building erected on a single acre of ground, leased for the purpose of operating an incubator for hatching chickens by artificial means and rearing them for the market.  The building was insured in a town mutual fire insurance company, and, action having been brought under the policy to recover the loss, this court held that such building was not a farm building within the meaning of sec. 2 of ch. 421 of the Laws of 1885, and therefore was not insurable by a town insurance company.  The court held that "the company had no power to effect this insurance under the above statute unless the insured building is a farm building within the meaning of the statute."  Furthermore, it is said in the opinion that the corporation had never specially authorized its directors to insure buildings of this class.  The court rests its opinion mainly upon the view adopted by it that the building in question did not constitute a farm building as that term is ordinarily used.  It is fur-

8] JANUARY TERM, 1928. 621

Blue Mound F. S. Co. v. Farmers' M. F. Ins. Co. 195 Wis. 615.

ther said in the opinion that the place where the building was located was not a farm, and that the operators of the hatchery could not be deemed farmers. The hatching of chickens by artificial means at the time of the rendition of this opinion was quite a novelty. Had these chickens been hatched by natural means, the court evidently would have arrived at a different conclusion, for it must be agreed that the premises can be deemed a farm and the building a farm building if they are used exclusively for raising chickens for the market.

Since the opinion in the *O'Neill Case* the process of farming has undergone marked changes; in fact, the improvements in buildings and appliances contained therein have largely kept pace with the improvements in all other matters of human endeavor, and whether this court will adhere to the decision in the *O'Neill Case* under present conditions and circumstances is somewhat problematical. But even in 1888, when the *O'Neill Case* was decided, farmers ordinarily used waste material derived both from the operation of their farm and the farm household and material obtained from other sources, after treating it in a manner similar to that which was applied to the waste in the instant case, as food for cattle and hogs, so that the *O'Neill Case* can hardly be deemed to be applicable to the instant case.

In the *Luthe Case, supra,* the plaintiff had taken out a policy of insurance in the defendant company upon his home, which was subsequently converted into a school house and occupied for the purposes of conducting a school. Sec. 10 of ch. 103 of the Laws of 1872 and sec. 1931 of the Revised Statutes prohibited town insurance companies from insuring school houses without a majority vote of the members, and it was there held that inasmuch as the dwelling house was converted into and used as a school house, the issuance of such policy was under the statutes void and *ultra vires*. That case certainly has no application to the instant case, and it can make no difference whatever whether the building orig-

inally was designed and used as a school house, where there was no compliance with the provisions of the statutes, or whether it was subsequently converted into a school house and then used for the purposes of a school.

For a period of about one and one-half months in the year 1922 the cooker contained in the cattle and hog barn was sublet to a firm known as Slafsky & Kamasar, to enable them to render grease and tallow out of meat scraps obtained from packing houses and butcher shops. The venture proved unsuccessful and was abandoned. In the same year the brood shed was also sublet to a subtenant named Schultz, who upon a small stove rendered a small quantity of grease and tallow, and at the end of one and one-half to two months this operation was also discontinued. The use of the buildings mentioned by these subtenants did not contribute in any way to the fire loss. The subletting in each instance was without the knowledge or consent of either the plaintiff or the defendant. It is the position of defendant's counsel that the use of the two buildings mentioned for the purposes aforesaid converted them into a rendering plant for manufacturing purposes, and that the policy was thereby avoided.

Sec. 202.06 (1) (c) of the Statutes of 1927 provides as follows:

"No property shall be insured in any such city or village except farm property or detached dwelling houses and contents, or barns or outbuildings used in connection with such dwelling house and not used for trade or manufacturing, and the contents of such barns or outbuildings."

Sec. 202.06, sub. (2), provides as follows:

"No such corporation shall insure any property other than detached dwellings and their contents, farm buildings and their contents, live stock in possession, use or running at large, farm products on premises and farming tools, implements and machinery; providing that it may, when its directors shall be so authorized at any annual meeting, insure property in any of the following classes, in an amount not exceeding ten thousand dollars on any single risk, to wit:

(1) country stores, (2) school houses, (3) town and society halls, (4) churches, (5) country hotels, (6) water mills, (7) blacksmith shops, (8) cheese factories, (9) creameries, and the contents of any such buildings."

The policy itself contains the following provision:

"And it is further agreed that in case the above mentioned premises shall at any time after the making and during the time this policy would otherwise continue in force be so altered, or be appropriated, applied, or used to or for the purpose of carrying on or exercising therein any trade, business, or vocation, which, according to the by-laws and conditions, class of hazards or rates hereto annexed would increase the hazard, unless it be so appropriated, applied, or used, this policy shall cease and be of no force or effect."

The statutes here quoted are identical with the provisions of the Statutes of 1919, in existence at the time when the policy herein was issued, and have not been changed excepting as to matters of no consequence in this case. A reading of the statutes thus quoted clearly manifests that the legislature intended to prohibit under sub. (1) (c) the use of the buildings therein referred to for the purposes of trade or manufacture, and that no intention with respect to a prohibition is referred to under sub. (2). The only apparent restriction, if any, with respect to the buildings referred to in sub. (2) consists of the requirement that the buildings be located upon a farm and that they be used primarily for farm purposes, from which it would appear to follow that a temporary use of these buildings for other than farm purposes, as was done by the subtenants, would not avoid the policy, especially where such use had been entirely discontinued for a period of nearly two years and where it in no manner contributed to the loss. But even assuming that such use by the subtenants was contrary to the provisions of the policy and of the by-laws of the company and was in contravention of the provisions of the statutes, where, as here, the use was merely temporary and such as not to change the character of the buildings, and no express words of for-

feiture are used, such use will merely work a suspension of the policy for the time being, and when such use is discontinued the policy automatically is reinstated.   In Cooley on Insurance, p. 2934, it is said:

"It is a principle established by weight of authority that a temporary breach of a stipulation or condition in a policy to which there is not attached a specific forfeiture, and which breach did not exist at the time of the fire and of the loss, will not defeat a recovery upon the policy."   Citing numerous authorities in various jurisdictions.

It is further said by the foregoing author:

"Thus, where a policy prohibits a certain change in the premises, a violation of such provision does not totally avoid the policy, but merely suspends it during such prohibited change."   (Citing numerous authorities.)  . . .  "As a necessary corollary to the doctrine of suspension of risk is the additional rule that on the termination of the increased risk the policy re-attaches, with all its original force and effect."

The doctrine with respect to suspension of a policy, as stated by Cooley and fortified by authorities, appears to be in accordance with the tendency of modern judicial decisions. It is also in accordance with the provisions of the standard fire insurance policy of the state, which establishes the public. policy of the state generally.   It would operate as a manifest injustice to hold that the policy became forfeited under the circumstances of this case, where there was a mere partial temporary use of the building in question by the subtenants for purposes other than farm purposes, and without the knowledge of the assured, especially where such use had been totally discontinued for a period of about two years prior to the occurrence of the fire, and where such use did not substantially change the character of the buildings as farm buildings, and where it in no manner contributed to the loss.

This leads to the conclusion that the judgment of the lower court must be affirmed.

*By the Court.*—Judgment affirmed.