This appeal arises from a declaratory judgment in favor of the plaintiff, Alfa Mutual Insurance Company ("Alfa"), denying coverage to the defendants, Carpet Installation and Supplies of Glencoe ("Carpet Installation"), William Thomas Harris, and Jeffrey Mark West. We affirm. The undisputed facts of the case are as follows:
Harris owned a Ford cargo van and was the named insured on an automobile liability policy issued by Alfa. On October 8, 1991, West, an employee of Carpet Installation, while driving the van to Dalton, Georgia, to pick up a load of carpet, collided with another vehicle. The van bore Carpet Installation's name and logo on its side and at the time was being used in the business of Carpet Installation.
Neither West nor Carpet Installation was named as an insured on the policy issued to Harris. The policy provided that only the named insured, family members, or those using the vehicle with the express permission of the insured or a family member would be covered,[1] and that there would be no liability coverage for "[a]ny covered car while rented to others by a covered person." Alfa filed a declaratory judgment action alleging that Kevin L. Patterson had been injured in the collision and seeking a declaration that under the policy it had no obligation to provide a defense in the event Patterson sued West or Carpet Installation, or to pay any judgment resulting from such a suit.
The trial court found that there was a rental agreement between Harris and Carpet Installation, and it held, therefore, that Harris's policy had not covered Carpet Installation or West. From May through October 1991, Carpet Installation had made seven consecutive monthly payments on Harris's truck, paying by checks made out to Farmers and Merchants Bank and drawn on Carpet Installation's account.[2] Carpet Installation also had paid Harris $125.30 for "truck insurance" and $60.93 for reasons none of the defendants could remember.
The defendants argue that the word "rent," as used in the policy, was ambiguous and therefore should be construed in their favor. See, St. Paul Mercury Ins. Co. v. Chilton-ShelbyMental Health Center, 595 So.2d 1375, 1377 (Ala. 1992). We disagree. The policy stated: "We do not provide Liability *Page 562 
Coverage for . . . [a]ny covered car while rented to others by a covered person," but it did not specifically define "rent."
The trial court referred to dictionaries for a definition of "rent." It stated:
 "Rent is defined by Webster as a usual fixed periodical return made by a tenant or occupant of property to the owner for the possession and use thereof — . It is also defined as the amount paid by a hirer of personal property to the owner for use thereof. As defined in Black's Law Dictionary, it is consideration paid for use or occupation of property."
The defendants advance two theories for their argument that the court erred. The first is that using the dictionary as a tool to clarify vague or ambiguous language is contrary to our policy that language in an insurance policy must be construed in light of the interpretation that an ordinary person — not a lawyer — would place on it. See National UnionFire Ins. Co. v. City of Leeds, 530 So.2d 205, 207 (Ala. 1988);St. Paul Fire Marine Ins. Co. v. Edge Memorial Hospital,584 So.2d 1316, 1322 (Ala. 1991); and McKissick v. Auto-Owners Ins.Co., 429 So.2d 1030, 1033 (Ala. 1983).
What is a dictionary definition if not an assertion of that very meaning that an ordinary person would give a particular word? It is exactly the result of an examination into the interpretation that ordinary people would give the word. The defendants would leave individual judges to apprehend the substance of the ordinary person's interpretation rather than allow them the assurance afforded by a reliable reference.
The defendants' other theory is that any ambiguity in the policy must be resolved in their favor; they cite the following rule:
 "[W]hen doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured. Likewise, when ambiguity exists in the language of an exclusion, the exclusion will be construed so as to limit the exclusion to the narrowest application reasonable under the wording. Guaranty National Ins. Co. v. Marshall County Board of Educ., 540 So.2d 745 (Ala. 1989)."
St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental HealthCenter, 595 So.2d 1375, 1377 (Ala. 1992). However, the opinion quoted goes on to state:
 "[I]t is equally well settled that in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage. If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. Johnson v. Allstate Ins. Co., 505 So.2d 362 (Ala. 1987)."
Id.
This Court has also stated:
 "Absent public policy considerations that dictate a contrary result, courts will not, in order to create a new contract for the parties, ignore express provisions of a policy, including exclusionary clauses or terms limiting the insurance company's liability. Where there is no ambiguity in the terms of an insurance contract as written, express provisions of the policy, including any exclusions, cannot be defeated by making a new contract for the parties. Although insurance policies containing ambiguities are to be construed in favor of the insured, it is imperative that courts enforce unambiguous policies as written."
Gardner v. Cumis Insurance Society, Inc., 582 So.2d 1094,1095-96 (Ala. 1991) (citations omitted).
The "rental" exclusion of the policy is not ambiguous. Rent is rent, and we have found no definition of that word restricting this exclusion any more than the definitions cited in the trial court's order. Although there was no express rental agreement between Harris and Carpet Installation, the facts as found by the trial court clearly show a de facto agreement. Carpet Installation used Harris's van and while using it made seven monthly payments to Farmers and Merchants Bank on the loan that was secured by a security interest in Harris's van. Harris testified at trial that this arrangement *Page 563 
was made in consideration of long-standing friendship or was a loan, but the trial court clearly found this testimony incredible in light of Harris's previous deposition testimony:
 Q: "Did he [Gregerson] just volunteer out of the goodness of his heart to make those car payments for you?
A: "No, it benefited him, too."
In a nonjury case in which the evidence was presented ore tenus, this Court will not disturb the trial court's findings of fact absent plain error or manifest injustice. Coghlan v.First Alabama Bank of Baldwin County, N.A., 470 So.2d 1119
(Ala. 1985). We find neither in this case.
The trial court certainly had substantial evidence from which it could find that the payments to the bank and to Harris from the partnership account were the consideration paid for the use of Harris's truck, which bore Carpet Installation's name and logo on the side and which was being used in that partnership's business, and that, as such, they constituted "rent." This arrangement brought the defendants within the scope of the policy exclusion. The trial court did not err in declaring that Alfa was not liable under the policy.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS and KENNEDY, JJ., concur.
[1] Because the trial court based its judgment on an exclusion contained in the policy, we do not reach the issue of whether West was driving the vehicle with Harris's express permission.
[2] The checks were dated May 20, 1991 ($195.28); June 10, 1991 ($185.98); July 1, 1991 ($185.98); July 29, 1991 ($185.98); September 2, 1991 ($185.98); September 30, 1991 ($185.98); and October 30, 1991 ($185.98).