MAIN, Justice.
The United States District Court for the Northern District of Alabama, Eastern Division (“the district court”), acting pursuant to Rule 18, Ala. R.App. P., has certified two questions of first impression to this Court. . This Court accepted and now answers those questions.
I. Certified Questions
The two questions certified by the district court are as follows:
“Whether a coverage exclusion clause in an automobile liability [insurance policy] which provides: ‘This coverage does not apply to: use of any motor vehicle to carry persons or property for a fee’ is enforceable as to an insured who delivers newspapers for an employer and is compensated by the employer based on the number of newspapers delivered, regardless of the location of customers. A secondary issue is whether said exclusion applies when the subject accident takes place after the delivery of the last paper, but while the insured is driving back to his point of origin or some other location.[1]
The district court noted that it did not certify issues “related to (1) waiver and estoppel; (2) the enforceability of the ‘duty to notify’ clauses; or the relevance of Alabama mandatory insurance or uninsured-motorists statutes” because it did not view any of these issues as controlling.
II. Factual Background and Procedural History
The district court set forth the following factual background in its certificate:

*797
“Facts and Circumstances Out of Which the Questicm(s) Arise

“The facts as stated are those found by the court after a non-jury trial held on June 20, 2011.
“This action arises out of a dispute between [Nationwide Mutual Insurance Company (‘Nationwide’) ] and the defendants as to insurance coverage. [Scott Thomas and Lori Touart Thomas (‘the Thomas defendants’) ] were injured as the result of an automobile accident which occurred at approximately 5:80 a.m. on October 12, 2009. Lori Thomas was the driver of one of the vehicles. The Thomas defendants have recovered a judgment in state court against defendant [Kenneth Gene] Gooden, [Jr.,] the driver of the other vehicle. The dispute involves whether the Thomas defendants are entitled to recover from [Nationwide] under the provisions of a Nationwide automobile liability insurance policy naming Gooden as an insured. The subject policy was issued on January 18, 2008, based on an application dated and submitted by Gooden on December 21, 2007.[2]
“The pertinent provisions in the subject policy and the application are the following:
“ ‘POLICY
“ T. Coverage Exclusions....
“ ‘This coverage does not apply to: Use of any motor vehicle to carry persons or property for a fee.
“ ‘2. General Policy Conditions ....
“ “We, you, and anyone insured by this policy must do certain things in order for the provisions of the policy to apply. The following are policy conditions:
“ ‘1. HOW YOUR POLICY MAY BE CHANGED....
“‘1(e) The policyholder has a duty to notify us as soon as possible of any change which may affect the premium or the risk under this policy_ This includes, but is not limited to, changes in ... (3) use of the insured vehicles. (Emphasis added [by the district court].)
“‘DECEMBER 21, 2007, APPLICATION
“T certify that the vehicles listed for coverage on this policy are not used for commercial use, the pick up and delivery of goods or people, which includes but is not limited to pizza, mail, newspapersf,] taxi, debris/snow removal, for hire or fee.’[3]
“At the time of the December 21, 2007, application, defendant Gooden’s sole employment was with a Honda supplier named New South Express. He was not delivering newspapers or otherwise engaging in any commercial activity other than his job with New South. The December 21, 2007, application and attachments to it were the only documents signed by Gooden prior to the date of the accident. Gooden did not make any misrepresentations in the application or its attachments.[4]
“In February 2009, while continuing to work full time for New South Express, Gooden began the part-time job of delivering the Talladega Daily or Sy-lacauga Daily newspaper(s) about one to two hours per night. Neither Gooden nor his wife, another named insured, ever notified Nationwide that he had begun delivering newspapers.
“The subject policy came up for further renewal on about July 18, 2009.5 The only renewal notice which [Nationwide] sent to Gooden was basically a statement of the premium due.6 At the time of the July 18, 2009, renewal, Goo-den was still delivering the Tallade- *798 ga/Sylaeauga newspapers and was still working full-time for New South Express.
“In August 2009, Gooden began delivering newspapers for The Birmingham News. At about the same time, he terminated his employment with New South Express, and the Birmingham News delivery became his only job. No notice of the Birmingham News newspaper delivery was given to Nationwide prior to the accident.
“On October 9, 2009, Gooden’s second child was born. There is a reasonable inference that this event affected Goo-den’s normal newspaper delivery situation. This event, coupled with Gooden’s not being able to remember anything from Sunday night October 11, 2009 to Wednesday October 14, 2009, creates difficulty with regard to determining the circumstances immediately prior to the accident. Among the circumstances were:
“(1) Gooden planned on October 11, 2009, to pick his wife up at the hospital on the morning of October 12, 2009.
“(2) Unlike the usual circumstance when his wife or someone else stayed with Gooden’s older child and took him to day care at 6:00 a.m., Gooden carried the child with him on October 12, 2009, when he was delivering newspapers and the child was with Gooden at the time of the accident. This change may have affected the timing of the deliveries. Gooden has no explanation as to why he would have been at the location of the accident at the time of the accident other than in connection with newspaper deliveries.
“The accident occurred on Houston Road. Ms. Thomas was heading north on Houston Road and Gooden was heading south on Houston Road, both near the intersection of Houston Road and McCedar Road. Ms. Thomas testified that the accident occurred south of the McCedar Road intersection.
“There is no direct evidence as to why Gooden was on the wrong side of the road as he approached Ms. Thomas’ vehicle. A possible inference is that he had started to turn left to go to Sparrow Lane where he had customers. Any determination by the court as to whether deliveries had been completed would be primarily speculative.
“At the time of the accident, Gooden was headed in a direction away from both his home and the day care center his child attended.
“The parties have agreed that the only factual dispute is whether Gooden was still in the process of delivering newspapers at the time of the accident. He was either still in the process of delivering newspapers or he had completed the delivery and was proceeding back home, to the day care center, or to another location.7 There is no question that Houston Road and Sparrow Lane were on Gooden’s delivery route.
“On October 13, 2009, a representative of Nationwide took a photograph of the inside of Gooden’s vehicle which revealed approximately 15 Birmingham News newspapers dated October 12, 2009. Gooden normally carried 129 newspapers plus some excess newspapers to cover unexpected circumstances. Gooden testified, without rebuttal, that he could not think of any reason he would have been out at 5:30 a.m. on October 12, 2009 other than in connection with delivering newspapers. There was no evidence at trial as to the location of the hospital. The newspapers were picked up at a location north of the insured’s house and, contrary to some suggestions in argument at trial, deliver *799 ies began substantially north of McCe-dar Road.
“The insured’s Birmingham News supervisor testified that if the insured was in the area of the accident he would have completed his delivery route. This is perhaps inconsistent with the fact of there being customers on Houston Road and Sparrow Lane. Gooden testified that he normally would have been to Houston Road by 1:00 to 1:30 a.m. and that he knew of no reason for him to be there at 5:30 a.m. and had ‘no idea’ why he was. Gooden’s supervisor offered testimony that she did not receive any calls about missed deliveries on October 12 and that would normally occur if there had been such misses. Gooden testified that he was usually back home by 5:30 a.m. Gooden picked up his newspapers at a spot north of his house. The accident location was substantially south of his house. Gooden has testified, and the court believes, that he never read the subject policy. Gooden was paid by the Birmingham News based upon the number of newspapers he delivered regardless of the location of the customers.

“Positions of the Parties

“[Nationwide’s] Positions
“1. There is no coverage because the policy provides that coverage is excluded because the policy states, ‘This coverage does not apply to: Use of any motor vehicle to carry persons or property for a fee.’ Further, the exclusion applies even if actual delivery has been concluded and Gooden was returning home or going elsewhere.
“2. There is no coverage because the insured did not notify [Nationwide] ‘as soon as possible of any change which may affect the premium or risk under this policy. This includes, but is not limited to, changes in use of the insured vehicles.’ [Nationwide] makes this claim with regard to the insured’s failure to notify [Nationwide] prior to the July 2009 renewal of the policy that he was delivering papers for the Talladega/Syla-cauga newspapers. [Nationwide] also makes this claim with regard to the failure of the insured to notify [Nationwide] that the insured had begun delivering newspapers for the Birmingham News after the last renewal. Any such claim as to the Birmingham News lacks merit because this delivery began after the July 2009 renewal and before the next scheduled renewal. [Nationwide] has acknowledged that the July 2009 renewal could not be cancelled or invalidated for this intervening reason prior to the next scheduled renewal date.8
“Cases Cited by [Nationwide]
“1. Twin City Fire Ins. Co. v. Alfa Mutual Ins. Co., 817 So.2d 687 (Ala.2001).
“[Nationwide] cites this case with reference to general Alabama law regarding enforcement of policy language, ambiguities, etc. This court applies the principles of this case as to some general principles, but not necessarily as to the specific issues certified.
“2. Alfa Life Ins. Corp. v. Lewis, 910 So.2d 757 (Ala.2005).
“This case involves misrepresentations made by insureds. There were no such misrepresentations in this case.
“3. Ex parte Quality Cas. Ins. Co., 962 So.2d 242 (Ala.2006).
“This case holds that misrepresentations in applications for the initial policy carry over to renewals. There have been no misrepresentations in this case. [Nationwide’s] reliance on this case is unfounded.
“4. Johnson v. Allstate Ins. Co., 505 So.2d 362 (Ala.1987).
*800 “This case stands for the proposition that coverage cannot be enlarged by waiver or estoppel. It apparently has more application to exclusions than to conditions or further requirements imposed on insureds. It may also have some application to the primary issue, but not to the secondary issue.
“5. Woodall v. Alfa Mut. Ins. Co., 658 So.2d 369 (Ala.1995).
“This case holds that waiver and es-toppel are not applicable to unambiguous exclusions.
“6. Liberty Mut. Fire Ins. Co. v. Parish, 630 So.2d 437 (Ala.1993). Gives another reason why estoppel and waiver do not apply to exclusions.
“7. See also McGee v. Guardian Life Ins. Co., 472 So.2d 993 (Ala.1985) (regarding waiver).
“Defendants’ Positions
“Defendants maintain that the ‘carrying property for a fee’ exclusion is ambiguous and not applicable to their claims or otherwise enforceable. Defendants further maintain that the insured had completed delivery of newspapers at the time of the accident and thus could not be considered to have been, at that time, carrying property for a fee, or to be subject to invalidation of coverage for lack of giving notice of a change.
“Defendants also argue that [Nationwide] waived any exclusion and/or condition of the policy by paying medical expenses after the accident and by receiving and retaining premiums for the policy. Defendants also argue that a commercial policy would not require a higher premium than the personal type policy that the insured had. [The court finds that a commercial policy would require a higher premium.]
“The defendants also assert that the policy’s notice to [Nationwide] provisions are not enforceable. [The court agrees with this position.] The defendants may have also picked up on questions by the court and now argue that the Alabama statutes with regard to mandatory insurance and uninsured motorist have some relevance.
“Cases Cited By Defendants
“1. Blue Mound Farm Supply Co. v. Farmers’ Mut. Fire Ins. Co., 219 N.W. 357, 360 (1928).
“Cited for the proposition that an exclusion or change does not always avoid policy coverage but merely suspends it during the actual time of carrying.
“2. Trinity Universal Ins. Co. v. Daniel, 202 S.W.2d 266, 267 (Tex.Civ.App.1947)
“Cited for similar reason as Blue Mound.
“3. Zurich Gen. Accident & Liab. Ins. Co. Ltd. Of Zurich, Switzerland v. Flickinger, 33 F.2d 853, 856 (4th Cir. 1929).
“ ‘And it is well settled that statements in an application for a policy which is renewed relate to the time when the original policy is issued; and, if they were true at that time, it is no defense that they may not have been true later or at the time of the renewal.’ (Citations omitted).
[[Image here]]
“4. Milbank Mut. Ins. Co. v. Wentz, 352 F.2d 592, 596 (8th Cir.1965).
“Milbank does not involve an exclusion.
“5. Preferred Risk Mut. Ins. Co. v. Hites, 259 N.E.2d 815, 820 (111.-App.Ct.1970).
“This case has some relevance to plaintiffs position with regard to any duty of the insured to notify of changes. [This court agrees that the notification of change provisions of this policy are *801 ambiguous in not stating matters relating to the required time of notice, nor the effect of a failure to notify. Further, the provisions inappropriately put a burden on the insured to determine material risk and the effect on premiums. There may also be ambiguity with regard to the term ‘use.’]

“Status of Alabama Law

“The parties have cited little, if any, controlling Alabama law on the certified issues(s).9
[[Image here]]
"2 For several years prior to December 2007, Gooden had one vehicle insured by [Nationwide]. His liability coverage was $25,000/$50,000. On January 18, 2008, a new policy added another vehicle and increased the liability coverage to $300,000/ $300,000. Nationwide also issued a new one million dollar umbrella policy to Gooden at the same time. There was some confusion at trial as to whether Gooden had been a Nationwide insured for 9 years prior to December 2007. Gooden says he began this relationship in 2003. The confusion likely arises because the Thomas[es’] attorney read '9 [6-month] terms’ as 9 years.
" 3 Note that the above-stated notification provision is not as specific as that in the application.
"4 [Nationwide] does not claim that Gooden misrepresented anything in the December 21, 2007, application. The court concludes that the ‘application’ has no ‘application’ to this case.
"5The third renewal after the January 18, 2008, issuance.
"6 There is no evidence that Nationwide ever sent Gooden any renewal notice or other document regarding use of the automobile after the January 2008 issuance of the policy and prior to the accident. Any such language that Nationwide ever gave or sent to Gooden was included only in the application and the policy issued in January 2008.
" 7 This creates a further issue as to whether proceeding from where he made his last delivery to his home or another location would be considered part of the delivery process. Even if the primary issue is determined to be that the exclusion is generally enforceable, the secondary issue is still not answered.
" 8 This is distinguished from argued invali-dations based on the failure to notify of the other newspaper deliveries prior to July 2009 and from the carrying of property for a fee exclusion.
" 9 The court notes that some help may be offered in Couch on Insurance, Third Edition at sections 29:32, 119.75, 119.76 and 120.34. The issues are also discussed at 57 A.L.R.5th 591 [(1998)]. Johnson v. Allstate Ins. Co., 505 So.2d 362 (Ala. 1987), lists several factors which should be considered in determining the enforceability of 'carrying for a fee.' These include: (1) whether the amount charged was definite; (2) proportionate to the trip; (3) voluntary or paid to the driver as consideration; and (4) whether the driver and passengers were engaged in a common enterprise. As stated, the case does not address the secondary issue. For a good general discussion, see RPM Pizza, Inc. v. [Automotive] Casualty Ins. Co., 601 So.2d [1366] [(La.1992)]."
III. Analysis
This Court has agreed to provide controlling Alabama law as to the two certified questions.[1]
A. Question No. 1: Whether the Carry-For-A-Fee Exclusion Applies to Newspaper Delivery
Nationwide Mutual Insurance Company (“Nationwide”) argues that the clause in its policy excluding coverage if the insured is engaged in the “carrying of persons or property for a fee” (“the carry-for-a-fee exclusion”) is unambiguous and is enforce *802 able as to Gooden, who was employed to deliver newspapers, who was compensated by the number of newspapers delivered, and who used his personal vehicle for those deliveries. Scott Thomas and Lori Touart Thomas argue that the carry-for-a-fee exclusion is ambiguous and therefore, they argue, not enforceable.[2]
This Court has previously addressed a similar exclusionary clause when the insured was using a personal vehicle to transport persons for a fee. In United States Fidelity & Guaranty Co. v. Hearn, 233 Ala. 31, 170 So. 59 (1936), the insurance policy at issue excluded coverage if the insured vehicle was being used “for carrying passengers for a consideration.” 233 Ala. at 33, 170 So. at 60 (opinion on rehearing). Hearn used his automobile to travel with several passengers from Alabama to attend a Rose Bowl football game in California. Hearn’s living expenses on the trip were to be paid from joint funds contributed by his passengers. This Court found that the parties agreed and intended that Hearn’s contribution to the trip was to be his automobile and his services in driving; therefore, they concluded, the payment of his expenses was not consideration paid by the passengers in exchange for the trip. Stating that “[ejach enterprise or adventure is to be judged on its particular facts,” the Court held that the carry-for-a-fee exclusion did not apply because “all the parties who went were engaged in a common enterprise or joint adventure for pleasure.” 233 Ala. at 34, 170 So. at 61 (opinion on rehearing).
In Imperial Assurance Co. v. Perry, 252 Ala. 424, 41 So.2d 394 (1949), the insurance policy excluded coverage during the time the insured vehicle was being used “to carry persons for a charge.” 252 Ala. at 425, 41 So.2d at 395. Perry obtained a taxi license when he purchased an automobile, but the evidence indicated that he had used the automobile only to transport his friends and had never used the automobile to transport paying passengers. While Perry was driving his automobile to pick up his wife, accompanied by a friend who was a nonpaying passenger, Perry was involved in a motor-vehicle accident. This Court held that the carry-for-a-fee exclusion was “based on the use of the automobile at the time of the accident” and further held that the evidence did not prove that, at the time of the accident, the insured was using the automobile “to carry persons for a charge.” Id.
In Johnson v. Allstate Insurance Co., 505 So.2d 362 (Ala.1987), this Court recognized that, as to the transporting of children to and from a day-care center, a similar carry-for-a-fee exclusion was clear and that the insurer was entitled to limit coverage under the exclusion. In Johnson, the insured used his personal vehicle to transport children daily to and from his day-care center, charging parents $1.00 per child each way for this transportation service. When the insured was involved in a motor-vehicle accident while he was transporting children enrolled in the daycare center, the insurer declined coverage because the insured was “carrying” the children in exchange for payment. The liability provision of the policy in Johnson excluded liability for the insured vehicle “while used to carry persons or property for a charge,” but the exclusion did not apply to “shared expense car pools.” Likewise, the collision provision of that policy excluded coverage for “any auto used for the transportation of people or property for a fee,” but that exclusion also did not apply to “shared expense car pools.” 505 So.2d at 364.
*803 In Johnson, this Court reviewed the general principles applicable to the interpretation of an insurance policy:
“Any ambiguities in an insurance contract must be construed liberally in favor of the insured. United States Fidelity & Guaranty Co. v. Baker, 24 Ala.App. 274, 134 So. 894, cert. denied 223 Ala. 172, 134 So. 896 (1931). A corollary to this rule is that exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. However, courts are not at liberty to rewrite policies to provide coverage not intended by the parties. Newman v. St. Paul Fire & Marine Insurance Co., 456 So.2d 40, 41 (Ala.1984). In the absence of statutory provisions to the contrary, insurance companies have the right to limit their liability and write policies with narrow coverage. United States Fidelity & Guaranty Co. v. Bonitz Insulation Co. of Alabama, 424 So.2d 569, 573 (Ala. 1982). If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. Turner v. United States Fidelity & Guaranty Co., 440 So.2d 1026, 1028 (Ala.1983).
“We have consistently held that coverage under an insurance policy cannot be enlarged by waiver or estoppel, since these doctrines can have a field of operation only when the subject matter is within the terms of the policy. Mooradian v. Canal Insurance Co., 272 Ala. 373, 379, 130 So.2d 915, 920 (1961). The reason behind this rule is that waiver and estoppel cannot operate to change the terms of a policy so as to cover additional matter. Hanover Fire Insurance Co. of New York v. Salter, 254 Ala. 500, 505, 49 So.2d 193, 197 (1950).”
505 So.2d at 365. Applying those principles to the facts before it, this in Court in Johnson held:
“What is central to this appeal is whether the amount charged was a definite amount, whether it was proportionate to the actual expenses of the trip, whether it was voluntary or, rather, was paid as consideration to the driver, and whether the driver and passengers were engaged in a common enterprise. Johnson’s deposition demonstrates that the dollar per trip was a definite amount unrelated to his actual expenses, paid as consideration for transporting students who were not engaged in a common enterprise with him. Under this evidence, there is no question that any claims arising out of this accident are excluded under the liability and collision coverages of the policy.
“The automobile liability insurance policy at issue here clearly limits the risks covered by excluding from coverage vehicles which are used to transport paying passengers. Under Alabama law, insurers have the right to so limit their liability. Courts which have interpreted policies with similar exclusionary clauses have recognized this limitation on coverage by determining that, although the limitation does not apply to pleasure trips made by friends or relatives or to car pool situations where the amount collected by the driver is proportionate to the expense of the journey, the risks associated with vehicles used to carry paying passengers for a set fee do not come within the risks covered by such policies.”
505 So.2d at 367.
The question now before us is whether a carry-for-a-fee exclusion may be enforced in the case of an insured who delivers newspapers and is compensated based on the number of newspapers deliv *804 ered. In order to answer that question, we must determine whether the carry-fora-fee exclusion in the Nationwide policy is ambiguous. In Twin City Fire Insurance Co. v. Alfa Mutual Insurance Co., 817 So.2d 687, 692 (Ala.2001), this Court discussed the issue of ambiguity in an insurance policy:
“If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction. American & Foreign Ins. Co. v. Tee Jays Mfg. Co., 699 So.2d 1226 (Ala.1997). The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous. Tate v. Allstate Ins. Co., 692 So.2d 822 (Ala.1997). While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning. Kelley v. Royal Globe Ins. Co., 349 So.2d 561 (Ala.1977). Where the parties disagree on whether the language in an insurance contract is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it. Western World Ins. Co. v. City of Tuscumbia, 612 So.2d 1159 (Ala.1992).
[[Image here]]
“Where an insurance policy defines certain words or phrases, a court must defer to the definition provided by the policy. St. Paul Fire & Marine Ins. Co. v. Edge Mem’l Hosp., 584 So.2d 1316 (Ala.1991).... If [a word or phrase] was defined we would defer to the definition provided by the policy. St. Paul Fire & Marine Ins. Co. v. Edge Mem’l Hosp., supra. [If] it is not, we must determine the meaning of the phrase. An undefined word or phrase in an insurance policy does not create an inherent ambiguity. To the contrary, where questions arise as to the meaning of an undefined word or phrase, the court should simply give the undefined word or phrase the same meaning that a person of ordinary intelligence would give it. Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co., 628 So.2d 560 (Ala.1993).”
Although the Nationwide policy does not define the terms used in the carry-for-a-fee exclusion, the terms are not unusual, technical, or otherwise unclear. We conclude that a person of ordinary intelligence would interpret the carry-for-a-fee exclusion to mean that an insurance policy containing such a clause will not provide coverage if the insured used the covered motor vehicle to transport property, such as newspapers, for which the insured receives compensation; therefore, neither the carry-for-a-fee exclusion as a whole nor the individual terms in the exclusion are ambiguous.
Whether a specific carry-for-a-fee exclusion can be applied to a specific insured, however, is a fact-driven determination, as Hearn, Perry, and Johnson all make clear. The finder of fact in each case must determine whether a particular insured did in fact put a covered vehicle to an excluded use. Based upon our holdings in Hearn, Perry, and Johnson and upon our application of this Court’s caselaw concerning the interpretation of an insurance policy, we conclude that the answer to the first certified question is yes: A clause in an automobile liability-insurance policy excluding coverage for the “use of any motor vehicle to carry persons or property for a fee” can be enforced as to an insured if the finder of fact concludes that the insured delivers newspapers for a fee and that the insured was using the covered vehicle for *805 that purpose at the time of the accident.[3]
B. Question No. 2: Whether the Carry-For-A-Fee Exclusion Applies After Delivery Is Complete
Alabama law concerning exclusions from coverage in an insurance policy is well settled.
“ ‘Exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it.’ Alliance Ins. Co. v. Reynolds, 494 So.2d 609, 612 (Ala.1986). Where there is no ambiguity in the terms of an insurance contract, the language must be enforced as written, and courts cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties; however, ‘ “when ambiguity exists in the language of an exclusion, the exclusion will be construed so as to limit the exclusion to the narrowest application reasonable under the wording.” ’ Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co., 628 So.2d 560, 562 (Ala.1993) (quoting St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Ctr., 595 So.2d [1375,] 1377 [ (Ala.1982) ]).”
Porterfield v. Audubon Indem. Co., 856 So.2d 789, 806 (Ala.2002). See also Johnson, 505 So.2d at 365.
Alabama law requires not only that we construe the carry-for-a-fee exclusion as narrowly as possible to provide the maximum coverage for the insured, but also that we enforce the exclusion as written. Furthermore, this Court held in Hearn, Perry, and Johnson that the enforceability of the carry-for-a-fee exclusion is based on the use of the covered vehicle at the time of the accident. In accordance with the foregoing requirements, we conclude that the exclusion applies so long as the insured is using the covered vehicle to deliver newspapers, but that after delivery is complete and the covered vehicle is no longer being used for delivery purposes, the exclusion does not apply. In other words, the carry-for-a-fee exclusion would apply beginning with the point when the newspapers are loaded into the vehicle and would not apply after the last newspaper is delivered. Based upon our application of this Court’s caselaw on the construction of an exclusionary clause in an insurance policy, we conclude that the answer to the second certified question is no: A clause in an automobile liability-insurance policy excluding coverage for the “use of any motor vehicle to carry persons or property for a fee” cannot be enforced as to an insured *806 after the delivery of the “property,” i.e., newspapers in this case, is complete.
IV. Conclusion
We answer the first certified question in the affirmative; we answer the second certified question in the negative.
QUESTIONS ANSWERED.
MALONE, C.J., and WOODALL, STUART, BOLIN, and PARKER, JJ., concur.
MURDOCK, SHAW, and WISE, JJ., dissent.

"1 The initial issue involves construction and applicability of the terms ‘carry,’ ‘property,’ and ‘fee.’ Also, whether the provision is ambiguous as a matter of law."

. Nationwide Mutual Insurance Company raises an issue in its brief as to Kenneth Gene Gooden, Jr.’s alleged failure to comply with the notice provisions of the policy, an issue the district court has already resolved; Scott Thomas and Lori Touart Thomas raise in their brief the issue whether Nationwide has met its burden of proving that this particular loss fell within the carry-for-a-fee exclusion, a matter we leave to be resolved by the district court.

. Although Gooden is named as a party in this case, he has not filed a brief with this Court.

. Other jurisdictions have reached similar conclusions. See, e.g., United States v. Milwaukee Guardian Ins. Co., 966 F.2d 1246 (8th Cir. 1992); Amerisure Ins. Co. v. Graff Chevrolet, Inc., 257 Mich.App. 585, 669 N.W.2d 304, 309-10 (2003), rev’d on other grounds, 469 Mich. 1003, 674 N.W.2d 379 (2004); Strader v. Progressive Ins., 230 S.W.3d 621 (Mo.Ct. App.2007); Progressive Universal Ins. Co. of Ill. v. Liberty Mut. Fire Ins. Co., 347 Ill.App.3d 411, 282 Ill.Dec. 636, 806 N.E.2d 1224 (2004); Almendral v. Security Nat’l Ins. Co., 704 So.2d 728 (Fla.Dist.Ct.App.1998). But see, e.g., Progressive Cas. Ins. Co. v. Metcalf, 501 N.W.2d 690 (Minn.Ct.App.1993); RPM Pizza, Inc. v. Automotive Cas. Ins. Co., 601 So.2d 1366 (La.1992); United States Fidelity & Guaranty Co. v. Lightning Rod Mut. Ins. Co., 80 Ohio St.3d 584, 687 N.E.2d 717 (1997); Prudential Prop. & Cas. Ins. Co. v. Sartno, 588 Pa. 205, 903 A.2d 1170 (2006); United Servs. Auto. Ass’n v. Couch, 643 S.W.2d 668 (Tenn.Ct.App.1982); Pizza Hut of America, Inc. v. West Gen. Ins. Co., 36 Ark.App. 16, 816 S.W.2d 638 (1991); First Georgia Ins. Co. v. Goodrum, 187 Ga.App. 314, 370 S.E.2d 162 (1988); Progressive Gulf Ins. Co. v. We Care Day Care Ctr., Inc., 953 So.2d 250 (Miss.Ct.App.2007).

. See Ala. Const.1901, § 140(b)(“The supreme court shall have original jurisdiction ... (3) to answer questions of state law certified by a court of the United States.” (emphasis added)).