**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-11396

————————————

AMANALI BABWARI,

*Plaintiff-Appellee,*

*versus*

STATE FARM FIRE AND CASUALTY COMPANY,

*Defendant-Appellant,*

AYRS FOOD & FUEL LLC, et al.,

*Defendants.*

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:21-cv-00895-RDP

————————————

Before WILLIAM PRYOR, Chief Judge, and LAGOA and KIDD, Circuit Judges.

PER CURIAM:

This appeal requires us to decide whether a convenience store's general liability insurance policy covers injuries suffered by an employee who was shot while leaving work. Amanali Babwari worked as a clerk at a convenience store in Birmingham, Alabama. While Babwari was leaving work one night, an assailant robbed and shot him. After Babwari obtained a consent judgment against his employer, he brought this action to compel his employer's insurer, State Farm Fire and Casualty Company, to pay the consent judgment. The district court entered summary judgment for Babwari. Because the policy's employer liability exclusion bars coverage, we reverse and remand with instructions to enter summary judgment for State Farm.

## I. BACKGROUND

Amanali Babwari worked as a clerk at the Pit Stop Grocery, a convenience store in Birmingham, Alabama. On the night of October 10, 2016, Babwari worked the closing shift by himself. He closed the store at around 11:00 pm and locked the front door. At that time, Babwari was off the clock.

He then walked to his car, which was parked in an unlit corner of the store's parking lot next to a dumpster. Babwari's employer required him to park in that location. As Babwari entered his car, an unknown assailant approached from behind the dumpster and shot him. The assailant demanded Barwari "give [him] all [he] got," so Babwari gave the assailant a bag with approximately $100 in small bills. The assailant then shot Babwari several more times and fled. Babwari was hit by at least nine bullets. He

managed to call 911 and was taken by ambulance to the hospital where he recovered over several weeks.

On April 28, 2017, Babwari sued Pit Stop in an Alabama court for negligence and wantonness because it failed to take reasonable security measures. He also brought a claim in the alternative under the Alabama Employer's Liability Act. *See* ALA. CODE §§ 25–6–1 through 25–6–4. State Farm initially defended Pit Stop under a reservation of rights, but it later determined that the policy did not cover Babwari's injuries and stopped defending against the suit. Pit Stop and Babwari then settled and moved for entry of a consent judgment against Pit Stop for $877,659.66. The state court entered the consent judgment, without stating which of Babwari's three claims supplied the basis for liability.

Babwari then brought an action in state court against State Farm under Alabama's Direct-Action Statute, which permits prevailing plaintiffs like Babwari to "proceed against the defendant and [its] insurer to reach and apply [any available] insurance money to the satisfaction of [a] judgment." ALA. CODE § 27–23–2. State Farm's liability hinges on whether the store owners had coverage for Babwari's injuries. *See St. Paul Fire & Marine Ins. Co. v. Nowlin*, 542 So. 2d 1190, 1194 (Ala. 1988). The State Farm policy covers "bodily injury" that is "caused by an 'occurrence.'" It defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy also contains several exclusions, including for "bodily injury" that "is expected or intended to cause harm as would be

expected by a reasonable person"; "is the result of willful and malicious, or criminal acts of the insured"; "aris[es] out of and in the course of . . . [e]mployment by the insured; or [p]erforming duties related to the conduct of the insured's business"; or "aris[es] out of any . . . [e]mployment-related practices, policies, acts or omissions."

State Farm removed the suit to the district court. The parties both moved for summary judgment. State Farm argued that Babwari's injuries were not covered by the policy because they did not constitute an "occurrence." It also argued that the four exclusions recited above precluded coverage. And it argued that Babwari could not establish coverage because the consent judgment did not specify which of Babwari's three claims provided the basis for liability, and at least Babwari's wantonness and Employer's Liability Act claims were excluded from coverage. Babwari argued that his injuries were covered by the policy and that no exclusion applied.

The district court granted summary judgment for Babwari. It interpreted the policy to cover injuries from negligence but not wantonness. Although Babwari asserted a claim for wantonness in the underlying state action, the district court reviewed the record from that proceeding and ruled that "there [was] no evidence . . . that would support a finding" that the store acted wantonly. By process of elimination, the district court determined that the negligence claim must have provided the basis for liability in the consent judgment. The district court did not address whether Babwari's claim under the Employer's Liability Act could have provided a

basis for liability. It ruled that Babwari's injuries counted as an "occurrence" covered under the policy and ruled that no exclusion barred coverage. It entered judgment for Babwari and ordered State Farm to pay the $877,659.66 consent judgment plus $262,035.51 in pre-judgment interest.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo*. *Pa. Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Parish*, 790 F.3d 1173, 1177 (11th Cir. 2015).

## III. DISCUSSION

State Farm raises three arguments on appeal. First, it argues that the district court erred by holding that Babwari's negligence claim provided the basis for liability in the consent judgment. Second, it argues that Babwari's injuries are not covered by the policy because they were not an "occurrence." Third, it argues that the employer's liability exclusion bars coverage of Babwari's injuries.

We need not address the first two arguments. Even if Babwari prevailed on them, he could not establish liability if a policy exclusion applies. We address only State Farm's third argument, which is dispositive.

The employer's liability exclusion bars coverage of injuries "arising out of and in the course of" the "[e]mployment by the insured" or the "[p]erform[ance] [of] duties related to the conduct of the insured's business." That language mirrors the Alabama workers' compensation statute, which covers "injur[ies] . . . arising out

6                    Opinion of the Court                    24-11396

of and in the course of . . . employment." ALA. CODE § 25-5-31. This similarity is no coincidence.

An employer's general liability insurance policy is designed to "provid[e] coverage for the employer's liability to the general public" but not "for an employer's liability for injuries to its employees." JORDAN R. PLITT, ET. AL., 9A COUCH ON INSURANCE § 129.11 (3d ed. June 2025 update). The employer's liability exclusion preserves this distinction and prevents a "duplication of the coverage provided under a Workers' Compensation and Employers Liability policy." MARTHA S. KERSEY, 3 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 18.03[5] (2025). When "a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 6, at 73 (2012) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 537 (1947)). So we look to workers' compensation caselaw to determine whether Babwari's injuries "ar[ose] out of and in the course of . . . employment."

The Supreme Court of Alabama employed this approach to construe a similar exclusion. *U.S. Fid. & Guar. Co. v. Byrd*, 137 So. 2d 743, 745 (Ala. 1962) ("The obvious intent of the exclusion contained in the policy is to limit the insurer's risk to injuries which are not within the purview of the workmen's compensation statutes."). So have federal and state courts in other jurisdictions. *See, e.g., Ottumwa Hous. Auth. v. State Farm Fire & Cas. Co.*, 495 N.W.2d

723, 727 (Iowa 1993) ("We think th[e] same meaning [as in workers' compensation] was intended to apply to the language 'arising out of and in the course of employment' in the employee exclusion clause."); *Gear Auto. v. Acceptance Indem. Ins. Co.*, 709 F.3d 1259, 1264 (8th Cir. 2013) ("Because this exclusionary language is borrowed from Missouri's Workers' Compensation Act, the exclusion is given the same interpretation."); *Devine v. Great Divide Ins. Co.*, 350 P.3d 782, 788 (Alaska 2015) (looking to "workers' compensation case law to interpret the meaning of the commercial general liability policy's exclusion of coverage for bodily injury 'arising out of and in the course of employment'" because "commercial general liability policies are designed to avoid the existence of an overlap or a gap between workers' compensation / employers' liability and commercial general liability policies"); *State Farm Mut. Auto. Ins. Co. v. Roe*, 573 N.W. 2d 628, 632 (Mich. Ct. App. 1997) ("We agree with plaintiff that the exclusionary language 'arising out of his or her employment' should be construed in a manner consistent with the worker[s'] compensation act.").

Alabama courts interpret "arising out of and in the course of employment" as a conjunctive double condition: the injury must both (1) "aris[e] out of" and (2) be "in the course of" employment. *Ex parte Shelby Cnty. Health Care Auth.*, 850 So. 2d 332, 335–36 (Ala. 2002). "Arising out of" employment connotes "a causal relationship between the claimant's performance of his or her duties as an employee and the complained-of injury." *Id.* at 336 (citation and internal quotation marks omitted). "In the course of" employment means "within the period of his employment, at a place where he

may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it." *Id.* (citation and internal quotation marks omitted). "The course of" employment is not limited to "work-related tasks" or instances when an employee is on the clock, but also includes "a reasonable time, space, and opportunity before and after [work] while [an employee] is at or near his place of employment." *Hughes v. Decatur Gen. Hosp.*, 514 So. 2d 935, 937 (Ala. 1987).

Both conditions apply here. Babwari's injuries "ar[ose] out of" his employment because there is a causal connection between his employment and his injuries. Babwari was in a dark corner of Pit Stop's parking lot, late at night, next to a dumpster that provided cover for the assailant, because his employer required him to park there and assigned him to work the closing shift. And Babwari's injuries were "in the course of" his employment because they occurred on employer-maintained premises while he was leaving work. Although injuries sustained while commuting to and from work generally do not occur "in the course of" employment, Alabama law recognizes an exception for injuries sustained immediately before or after work at "parking lot[s] owned and maintained by [the] employer." *Brunson v. Lucas*, 5 So. 3d 1274, 1277 (Ala. Civ. App. 2008). That exception extends even to certain off-premises locations adjacent to a workplace, such as a public street between a hospital and the hospital's parking lot, *Hughes*, 514 So. 2d at 937, or a sidewalk immediately outside a workplace, *Barnett v. Britling Cafeteria Co.*, 225 Ala. 462, 464 (1932). Babwari's injuries undisputedly occurred immediately after work while he was still on

his employer's premises. So they occurred "in the course of" his employment.

Babwari offers three counterarguments, but none persuades. First, he argues that we should not look to workers' compensation law because Alabama courts broadly construe employment for workers' compensation purposes, *see Ex parte Weaver*, 871 So. 2d 820, 824 (Ala. 2003), but narrowly construe insurance policy exclusions, *Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 805 (Ala. 2012). But those interpretive presumptions apply only in the face of ambiguity. *See Wakefield v. State Farm Mut. Auto. Ins. Co.*, 572 So. 2d 1220, 1223 (Ala. 1990). Pit Stop's insurance policy unambiguously transplants the meaning of "arising of out and in the course of . . . employment" from the workers' compensation statute. *See Byrd*, 137 So. 2d at 745. Because the policy is "clear and unambiguous," it "must be enforced as written." *Wakefield*, 572 So. 2d at 1223. Second, Babwari argues that his injuries would not be compensable under the Alabama workers' compensation statute because they were "caused by the act of a third party who intends to injure the employee because of reasons personal to the employee and not directed against him or her as an employee." *Ex parte N.J.J.*, 9 So. 3d 455, 457 (Ala. 2008). But that rule derives from the workers' compensation statute's definition of "injury." *Id.* (citing Ala. Code. § 25-5-1(9)). Whether Babwari's injuries satisfy other provisions of the workers' compensation statute is beside the point. For our purposes, it matters only whether Babwari's injuries "ar[ose] out of and in the course of . . . employment." Finally, Babwari argues that we should look to *respondeat superior* instead of workers'

compensation. But he does not explain why *respondeat superior* provides a better framework, particularly given that the workers' compensation statute uses nearly identical language to the policy.

## IV. CONCLUSION

We **REVERSE** the summary judgment in favor of Babwari and **REMAND** with instructions to enter summary judgment in favor of State Farm.